AO 241 (Rev. 09/17)

FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

2026 MAY 11  AM 11:33

OFFICE OF THE CLERK

**PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

| | |
|---|---|
| **United States District Court** | District: NEBRASKA |
| Name (under which you were convicted): WILLIAM J. QUINN | Docket or Case No.: 8:26 CV 215 |
| Place of Confinement: RECEPTION AND TREATMENT CENTER (NDCS) | Prisoner No.: 214306 |
| Petitioner (include the name under which you were convicted) | Respondent (authorized person having custody of petitioner) |

v.

WILLIAM J. QUINN    CRAIG GABLE (WARDEN RTC)

The Attorney General of the State of:

**PETITION**

1. (a) Name and location of court that entered the judgment of conviction you are challenging:

   FURNAS COUNTY DISTRICT COURT
   STATE OF NEBRASKA

   (b) Criminal docket or case number (if you know): CR 20-38

2. (a) Date of the judgment of conviction (if you know): 6-25-2021

   (b) Date of sentencing: 12-22-2021

3. Length of sentence: 175 YEARS 18 MONTHS TO 315 YEARS 51 MONTHS

4. In this case, were you convicted on more than one count or of more than one crime?  ☒ Yes  ☐ No

5. Identify all crimes of which you were convicted and sentenced in this case: 1 COUNT CHILD ABUSE 9-27 MONTHS (CS)
   3 COUNTS 1ST DEGREE SEX ASSAULT OF A CHILD (30-50 YEARS) 15 YR MIN/MIN EA.(CS)
   2 COUNTS HUMAN SEX TRAFFICKING OF A MINOR (30-50 YEARS)  CONSECUTIVE (CS)
   3 COUNTS MANUFACTURING VISUAL DEPICTION OF SEXUALLY EXPLICIT CONDUCT (15-35 YEARS)
   FIRST 2 COUNTS AND (15-50 YEARS) COUNT 3, 3 YEAR MAN MINIMUM (CC) CONCURRENT
   2 COUNTS POSSESSION VISUAL SEXUAL CONDUCT (10-15 YEARS) (CS) TO OTHERS (CC) TO EACH OTHER
   2 COUNTS ENTICEMENT BY ELEC. COMMUNICATION DEVICE (9-24 MONTHS) (CS) TO OTHERS CC TO EACH OTHER

6. (a) What was your plea? (Check one)

   ☒ (1)  Not guilty      ☐ (3)  Nolo contendere (no contest)

   ☐ (2)  Guilty          ☐ (4)  Insanity plea

Page 2 of 16

AO 241 (Rev. 09/17)

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?  NOT GUILTY TO ALL COUNTS

(c) If you went to trial, what kind of trial did you have? (Check one)

       ☒ Jury    ☐ Judge only

7.    Did you testify at a pretrial hearing, trial, or a post-trial hearing?

       ☐ Yes    ☒ No

8.    Did you appeal from the judgment of conviction?

       ☒ Yes    ☐ No

9.    If you did appeal, answer the following:

(a) Name of court:  NEBRASKA COURT OF APPEALS, STATE OF NEBRASKA

(b) Docket or case number (if you know):  A-21-1038

(c) Result:  AFFIRMED CONVICTIONS

(d) Date of result (if you know):  DECEMBER 6TH, 2022

(e) Citation to the case (if you know):  NO CITATION

(f) Grounds raised:  THE DISTRICT COURT ERRED IN (1) ADMITTING RULE 404 TESTIMONY AND NOT RECEIVING THE DEPOSITION OF UNAVAILABLE WITNESS; (2) DENYING MOTION TO DISMISS; (3) DENYING MOTION FOR MISTRIAL; AND THAT (4) THE EVIDENCE IS AND WAS INSUFFICIENT TO SUPPORT SPECIFIC CONVICTIONS; (5) THE SENTENCES IMPOSED WERE EXCESSIVE; AND (6) HIS COUNSEL WAS INEFFECTIVE IN MULTIPLE PREJUDICIAL WAYS AND PERFORMED DEFICIANTLY.

(g) Did you seek further review by a higher state court?    ☐ Yes   ☒ No

If yes, answer the following:

(1) Name of court:

(2) Docket or case number (if you know):

(3) Result:

Page 3 of 16

AO 241 (Rev. 09/17)

(4) Date of result (if you know): _____

(5) Citation to the case (if you know): _____

(6) Grounds raised: _____

_____

_____

_____

(h) Did you file a petition for certiorari in the United States Supreme Court?  ☐ Yes  ☐ No

If yes, answer the following:

(1) Docket or case number (if you know): _____

(2) Result: _____

_____

(3) Date of result (if you know): _____

(4) Citation to the case (if you know): _____

10.  Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?  ☒ Yes  ☐ No

11.  If your answer to Question 10 was "Yes," give the following information:

(a)  (1) Name of court: FURNAS COUNTY DISTRICT COURT

(2) Docket or case number (if you know): CR 20-38

(3) Date of filing (if you know): 12-4-2023

(4) Nature of the proceeding: VERIFIED MOTION FOR POSTCONVICTION RELIEF

(5) Grounds raised: (1) INEFFECTIVE ASSISTANCE OF COUNSEL; A. FAILURE TO FILE BEN SASSE LETTER, B. FAILURE TO CALL DEFENSE WITNESSES, C. FAILURE TO SUPRESS EVIDENCE, D. VIORE DIRE ERRORS, E. NO VENUE CHANGE, F. RUSHED DEFENSE. (2.) INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL; A. FAILED TO PRESENT MOST IMPORTANT ISSUES AND FAILED TO ADVISE OF FILING PETITION FOR FURTHER REVIEW. (3.) DISTRICT COURT ERRED AND ABUSED DISCRETION BY FAILING TO APPOINT POSTCONVICTION COUNSEL ON A CASE AS LENGTHY, COMPLICATED, AND WITH A SENTENCE EQUAL TO DEFACTO LIFE AND EQUAL TO A CAPITAL OFFENSE SENTENCE.

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes  ☒ No

(7) Result: MOTION DENIED WITHOUT AN EVIDENTIARY HEARING.

Page 4 of 16

AO 241 (Rev. 09/17)

(8) Date of result (if you know):  _FEBRUARY 24, 2025_

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____ N/A _____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

◻ Yes    ☒ No

(7) Result: _____

(8) Date of result (if you know): _____

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____ N/A _____

Page 5 of 16

AO 241 (Rev. 09/17)

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes   ☐ No

(7) Result: _____ N/A _____

(8) Date of result (if you know): _____

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition: ☒ Yes   ☐ No

(2) Second petition: ☐ Yes   ☐ No

(3) Third petition: ☐ Yes   ☐ No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

_____

_____

12. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground. Any legal arguments must be submitted in a separate memorandum.

**CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**

**GROUND ONE:** U.S. CONSTITUTIONAL VIOLATION OF INEFFECTIVE ASSISTANCE OF COUNSEL. THIS INEFFECTIVE ASSISTANCE OCCURRED BY TRIAL COUNSEL.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

1. FAILED TO ~~ADMIT~~ ENTER PREJUDICIAL LETTER FROM BEN SASSE INTO EVIDENCE. 2. FAILED TO CALL WITNESSES, MATERIAL AND CHARACTER, INCLUDING QUINN. 3. FAILED TO SUPRESS FACEBOOK QUESTONABLE EVIDENCE. FAILED TO OFFER AVAILABLE EVIDENCE TO SUPPORT CHANGE OF VENUE DUE TO CONNECTIONS TO ALL AT TRIAL. 5. FAILED TO PROTECT CLIENT AND IMPEACH JURORS AT JURY SELECTION. 6. FAILING TO EQUAL A LAWYER OF BASIC EDUCATION BY NOT PRESENTING A BASIC DEFENSE. DEFENDANTS DEFENSE

(b) ~~If you did not exhaust your state remedies on Ground One, explain why:~~ LASTED 1½ HOURS WHILE THE PROSECUTION TOOK 6½ DAYS, BEING TOLD TO RUSH TO AVOID WEEKEND DELAY. 7. FAILED TO RAISE MULTIPLE IRREGULARITIES. 8 IMPROPER CHAIN OF CUSTODY AND TREATMENT OF ELECTRONIC DEVICES BY NOT OBJECTING AND FAILING TO SUPRESS SOCIAL MEDIA.

_____

_____

AO 241 (Rev. 09/17)

(c)   **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?   ☒ Yes   ☐ No

(2) If you did not raise this issue in your direct appeal, explain why:

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☒ Yes   ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:   VERIFIED MOTION FOR POSTCONVICTION RELIEF

Name and location of the court where the motion or petition was filed:   FURNAS COUNTY DISTRICT COURT, NEBRASKA

Docket or case number (if you know):   CR 20-38

Date of the court's decision:   2-24-2025

Result (attach a copy of the court's opinion or order, if available):   DENIED WITHOUT AN EVIDENTIARY HEARING

(3) Did you receive a hearing on your motion or petition?   ☐ Yes   ☒ No

(4) Did you appeal from the denial of your motion or petition?   ☒ Yes   ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ☒ Yes   ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:   NEBRASKA COURT OF APPEALS STATE OF NEBRASKA

Docket or case number (if you know):   A-25-215

Date of the court's decision:   2/17/2026

Result (attach a copy of the court's opinion or order, if available):

AFFIRMED

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

AO 241 (Rev. 09/17)

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One: N/A OTHER THAN A PETITION FOR FURTHER REVIEW TO NEBRASKA SUPREME COURT

**GROUND TWO:** US CONSTITUTIONAL VIOLATION OF INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

1.) COUNSEL FAILED TO ADDRESS THE MOST IMPORTANT ISSUES QUINN ADVISED HIM TO DO.

2.) COUNSEL FAILED TO ADVISE QUINN THAT FURTHER REVIEW TO THE NEBRASKA SUPREME COURT WAS AVAILABLE AND MORE IMPORTANTLY NEEDED.

3.) FAILED TO RAISE MULTIPLE TRIAL IRREGULARITIES INCLUDING SIDE BARS AND MEETINGS IN CHAMBERS WITHOUT DEFENDANT AND JURY PRESENT.

(b) If you did not exhaust your state remedies on Ground Two, explain why:

(c)     **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?   ☐ Yes   ☒ No

(2) If you did not raise this issue in your direct appeal, explain why: THIS GROUND IS PERTAINING TO DIRECT APPEAL COUNSEL

(d)     **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☒ Yes   ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: VERIFIED MOTION FOR POSTCONVICTION RELIEF

Name and location of the court where the motion or petition was filed: FURNAS COUNTY DISTRICT COURT, NEBRASKA

Docket or case number (if you know): CR-20-38

AO 241 (Rev. 09/17)

Date of the court's decision: _____2/24/26_____

Result (attach a copy of the court's opinion or order, if available): _____

_____DENIED_____

(3) Did you receive a hearing on your motion or petition?  ☐ Yes  ☒ No

(4) Did you appeal from the denial of your motion or petition?  ☒ Yes  ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?  ☒ Yes  ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: NEBRASKA COURT OF APPEALS

Docket or case number (if you know): A-25-215

Date of the court's decision: 2-17-2026

Result (attach a copy of the court's opinion or order, if available): _____

_____AFFIRMED_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)  **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Two : N/A OTHER THAN A PETITION FOR FURTHER REVIEW TO THE NEBRASKA SUPREME COURT.

**GROUND THREE:** THE DISTRICT COURT ABUSED ITS DISCRETION AND DUE PROCESS RIGHTS OF DEFENDANT CAUSING AN UNCONSTITUTIONAL AND IRREGULAR PROCEEDING.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

1. ADMITTED 404 TESTIMONY AND DID NOT ALLOW RECEIVING DEPOSITION OF UNAVAILABLE WITNESS. 2. DENIED MOTION TO DISMISS AND MISTRIAL. 3 ALLOWED SPECIFIC CONVICTIONS WITHOUT SUFFICIENT EVIDENCE. 4. SENTENCE IMPOSED WAS EXCESSIVE (DEFACTO LIFE) 5 FAILED TO ALLOW CROSS EXAMINATIONS. 6. FAILED TO APPOINT COUNSEL ON THIS MASSIVLY COMPLICATED CASE. 7 CONDUCTED SEVERAL IRREGULARITIES INCLUDING MULTIPLE SIDE BARS AND MEETINGS IN CHAMBERS AWAY FROM DEFENDANT AND JURY BUT WITH PROSECUTION STAFF PRESENT.

Page 9 of 16

AO 241 (Rev. 09/17)

(b) If you did not exhaust your state remedies on Ground Three, explain why: _____

_____

_____

(c)    **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☒ Yes    ☐ No

(2) If you did not raise this issue in your direct appeal, explain why: _____

_____

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☒ Yes    ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:    VERIFIED MOTION FOR POST CONVICTION RELIEF

Name and location of the court where the motion or petition was filed:    FURNAS COUNTY
DISTRICT COURT, NEBRASKA

Docket or case number (if you know):    CR-20-38

Date of the court's decision:    2-24-26

Result (attach a copy of the court's opinion or order, if available): _____

_____

(3) Did you receive a hearing on your motion or petition?    ☐ Yes    ☒ No

(4) Did you appeal from the denial of your motion or petition?    ☒ Yes    ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☒ Yes    ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:    NEBRASKA COURT OF
APPEALS

Docket or case number (if you know):    A 25-215

Date of the court's decision:    2-17-2026

Result (attach a copy of the court's opinion or order, if available): _____

_____

AO 241 (Rev. 09/17)

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Three: _____

_____

_____

**GROUND FOUR:** _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Four, explain why: _____

_____

_____

_____

(c)    **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ❏  Yes    ❏  No

(2) If you did not raise this issue in your direct appeal, explain why: _____

_____

_____

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

❏  Yes    ❏  No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

AO 241 (Rev. 09/17)

Name and location of the court where the motion or petition was filed: _____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

| | | |
|---|---|---|
| (3) Did you receive a hearing on your motion or petition? | ☐ Yes | ☐ No |
| (4) Did you appeal from the denial of your motion or petition? | ☐ Yes | ☐ No |
| (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? | ☐ Yes | ☐ No |

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

_____

_____

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four: _____

_____

_____

_____

_____

_____

AO 241 (Rev. 09/17)

13.    Please answer these additional questions about the petition you are filing:

(a)    Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?    ☐ Yes    ☒ No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them:    GROUNDS FROM DIRECT APPEAL NOT PETITIONED FOR FURTHER REVIEW BY NEBRASKA SUPREME COURT DUE TO LACK OF ADVICE FROM APPELLANT COUNSEL.

(b)    Is there any ground in this petition that has not been presented in some state or federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:    THE GROUND THAT NEBRASKA STATE COURTS HOLD A PROSE INDIGENT PERSON TO AN UNFAIR STANDARD WITH A 1 YEAR CRASH COURSE IN LAW HAVING TO EQUAL A LAWYER OF MANY YEARS OF LAW SCHOOL, AND AVOIDING MERITS OVER TECHNICAL JARGON.

14.    Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?    ☐ Yes    ☒ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available.

15.    Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?    ☒ Yes    ☐ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.    PETITION FOR FURTHER REVIEW OF POST CONVICTION THAT WAS DENIED BY NEBRASKA COURT OF APPEALS ~~THAT~~ FILED 3-24-26 IN THE NEBRASKA SUPREME COURT DOCKET # A-25-215

AO 241 (Rev. 09/17)

16.    Give the name and address, if you know, of each attorney who represented you in the following stages of the

judgment you are challenging:

(a) At preliminary hearing: MALLORY HUGHES DORNAN LAW TEAM 1403 FARNAM STREET, SUITE 232 OMAHA, NE 68102

(b) At arraignment and plea: MALLORY HUGHES DORNAN LAW TEAM 1403 FARNAM STREET, SUITE 232 OMAHA, NE 68102

(c) At trial: MALLORY HUGHES DORNAN LAW TEAM 1403 FARNAM STREET, SUITE 232 OMAHA, NE 68102

(d) At sentencing: JOE HOWARD DORNAN LAW TEAM 1403 FARNAM STREET, SUITE 232 OMAHA, NE 68102

(e) On appeal: CHARLES BREWSTER 3423 2ND AVE, SUITE 7, P.O. BOX 521 KEARNEY, NE 68848-0521

(f) In any post-conviction proceeding: PRO SE

(g) On appeal from any ruling against you in a post-conviction proceeding: PRO SE

17.    Do you have any future sentence to serve after you complete the sentence for the judgment that you are

challenging?        ☐ Yes   ☒ No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the

future?        ☐ Yes   ☐ No

18.    TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain

why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

AO 241 (Rev. 09/17)

_____

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

> (1)    A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -
>
>     (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>     (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;
>
>     (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>     (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

AO 241 (Rev. 09/17)

(2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief: REVERSE AND REMAND CASE BACK TO DISTRICT COURT FOR NEW FAIR TRIAL WITH INSTRUCTIONS TO HOLD NEW PROCEEDING; OR REVERSE AND REMAND TO DISTRICT COURT TO HOLD EVIDENTIARY HEARING FOR POSTCONVICTION, OR VACATE SENTENCE

or any other relief to which petitioner may be entitled. AND CONVICTIONS OR HOLD NEW AND FAIR SENTENCES

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on ___5-4-26___ (month, date, year).

Executed (signed) on ___5-4-26___ (date).

_____
Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

_____

_____

_____

_____

AO 241 (Rev. 09/17)

# Petition for Relief From a Conviction or Sentence
# By a Person in State Custody

### (Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus)

### Instructions

1.  To use this form, you must be a person who is currently serving a sentence under a judgment against you in a state court. You are asking for relief from the conviction or the sentence. This form is your petition for relief.

2.  You may also use this form to challenge a state judgment that imposed a sentence to be served in the future, but you must fill in the name of the state where the judgment was entered. If you want to challenge a federal judgment that imposed a sentence to be served in the future, you should file a motion under 28 U.S.C. § 2255 in the federal court that entered the judgment.

3.  Make sure the form is typed or neatly written.

4.  You must tell the truth and sign the form. If you make a false statement of a material fact, you may be prosecuted for perjury.

5.  Answer all the questions. You do not need to cite law. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit any legal arguments, you must submit them in a separate memorandum. Be aware that any such memorandum may be subject to page limits set forth in the local rules of the court where you file this petition.

6.  You must pay a fee of $5. If the fee is paid, your petition will be filed. If you cannot pay the fee, you may ask to proceed in forma pauperis (as a poor person). To do that, you must fill out the last page of this form. Also, you must submit a certificate signed by an officer at the institution where you are confined showing the amount of money that the institution is holding for you. If your account exceeds $ _____ , you must pay the filing fee.

7.  In this petition, you may challenge the judgment entered by only one court. If you want to challenge a judgment entered by a different court (either in the same state or in different states), you must file a separate petition.

8.  When you have completed the form, send the original and ____ copies to the Clerk of the United States District Court at this address:

### Clerk, United States District Court for
### Address
### City, State  Zip Code

If you want a file-stamped copy of the petition, you must enclose an additional copy of the petition and ask the court to file-stamp it and return it to you.

9.  **CAUTION: You must include in this petition all the grounds for relief from the conviction or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**

10. **CAPITAL CASES: If you are under a sentence of death, you are entitled to the assistance of counsel and should request the appointment of counsel.**

RECEIVED

MAY 1 1 2026

CLERK
U.S. DISTRICT COURT

Page 1 of 16

COPY

CLERK
NEBRASKA SUPREME COURT
COURT OF APPEALS

IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. QUINN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

WILLIAM J. QUINN, APPELLANT.

Filed December 6, 2022.    No. A-21-1038.

Appeal from the District Court for Furnas County: JAMES E. DOYLE IV, Judge. Affirmed.

Charles D. Brewster, of Anderson, Klein, Brewster & Brandt, for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

MOORE, RIEDMANN, and BISHOP, Judges.

MOORE, Judge.

## I. INTRODUCTION

William J. Quinn appeals from his convictions following a jury trial in the district court for Furnas County of three counts of first degree sexual assault of a child, two counts of sex trafficking of a minor, three counts of manufacturing a visual depiction of sexually explicit conduct, two counts of possession of a visual depiction of sexually explicit conduct, two counts of enticement by an electronic communication device, and one count of child abuse. On appeal, Quinn claims that the district erred in certain evidentiary rulings and in failing to grant his motion to dismiss and motion for mistrial. He also claims that the evidence was insufficient to support his convictions for specific counts, that he received an excessive sentence, and that he received ineffective assistance from his trial counsel. Finding no error, we affirm.

- 1 -

## II. STATEMENT OF FACTS

This case arises out of a relationship between Quinn, born April 1964, and C.G., born October 2003. Quinn and C.G. began communicating over social media in March 2019 and developed a sexual relationship in June when C.G. moved back to Nebraska.

### 1. PRETRIAL PROCEEDINGS

On April 7, 2020, Quinn was charged by information with four felony counts arising out of his involvement with C.G. A preliminary hearing was held on March 13.

On July 8, 2020, the State filed an amended information which charged Quinn with four counts of first degree sexual assault of a child in violation of Neb. Rev. Stat. § 28-319.01(1)(b) (Reissue 2016), a Class IB felony; one count of first degree sexual assault in violation of Neb. Rev. Stat. § 28-319 (Reissue 2016), a Class II felony; two counts of sex trafficking of a minor in violation of Neb. Rev. Stat. § 28-830 (Cum. Supp. 2020), a Class IB felony; three counts of manufacturing a visual depiction of sexually explicit conduct in violation of Neb. Rev. Stat. § 28-1463.03(1) (Reissue 2016), a Class ID felony; two counts of possession of a visual depiction of sexually explicit conduct in violation of Neb. Rev. Stat. § 28-813.01(1) (Cum. Supp. 2020), a Class IIA felony; two counts of enticement by an electronic communication device in violation of Neb. Rev. Stat. § 28-833 (Reissue 2016), a Class IV felony; and one count of child abuse in violation of § 28-707 (Cum. Supp. 2020), a Class IIIA felony. Quinn thereafter entered a plea of not guilty to all charges set forth in the amended information and waived a preliminary hearing related to the amended information.

### (a) Motion for Change of Venue

On February 16, 2021, Quinn filed a motion for a change of venue, alleging that the "excessive" media coverage in Furnas County had inundated the jury pool to the point that a fair and impartial jury could not be impaneled in the county. In an amended motion for a change of venue, Quinn further alleged that a search for his name in Nebraska-based media produced 61 news stories related to his case and that the pretrial publicity included "inflammatory" information such as detailing the nature of his criminal charges, testimony from the preliminary hearing related to the original information, and noting the convictions of other individuals involved in the case.

A hearing on Quinn's motion was held on April 12, 2021, when Quinn offered multiple news articles reporting on his case. On May 3, the district court denied Quinn's motion for a change of venue, noting that the offered exhibits indicated no hostility or animosity towards Quinn, nor did any of the news articles appear to be factually inaccurate. The court further observed that the only evidence reported on by the media was testimony elicited at the preliminary hearing, and that the arrest affidavits had been sealed and were unavailable to both the public and members of the media.

### (b) Intent to Offer 404 Evidence

On April 27, 2021, the State filed a notice of intent to offer 404 evidence regarding Quinn's involvement in commercial sex trafficking encounters between S.G., C.G.'s older sister, and Daniel Nagy. The State alleged that the evidence was admissible for the specific and limited purposes of showing Quinn's intent, knowledge, and the absence of mistake or accident concerning

- 2 -

his human trafficking counts. On May 13, Quinn filed a motion in limine to preclude the State from offering the evidence related to S.G. and Nagy, alleging that the evidence was "classic propensity evidence" and that its probative value was substantially outweighed by the danger of unfair prejudice.

A hearing on both evidentiary motions was held on May 20, 2021. S.G. testified that in early 2018, she worked in a café owned by Quinn. A few months into her employment, Quinn began groping S.G.'s breasts and buttocks without her consent. Soon after, Quinn and S.G. began to have sexual intercourse, for which Quinn would pay S.G. Though S.G. asked Quinn to stop, he would remind S.G. that she was earning money for her family. S.G. testified that she did not enjoy engaging in commercial sex, but that she found it was easier to "just do it to get it done, and then it was okay." S.G. described feeling trapped by Quinn and that she had been "subtly threatened."

In the fall of 2018, when S.G. was 32 years old, Quinn approached S.G. about having intercourse with Nagy, a friend of Quinn's, noting that S.G. owed him a favor. S.G. described Quinn transporting her to Nagy's home, where she performed oral sex on Nagy. Afterwards, Nagy paid S.G. $50 and S.G. called Quinn to pick her up. S.G. noted that she performed commercial oral sex on Nagy two or three times, and that she never communicated directly with Nagy about the arrangement. Quinn would arrange the encounters between S.G. and Nagy, informing S.G. only minutes before the commercial sex was to occur.

Nagy testified consistently with S.G. In 2018, Quinn made arrangements to bring S.G. over to Nagy's home for a sexual encounter on three occasions. After S.G. performed oral sex, Nagy paid her $50, per Quinn's instructions. Nagy stated that Quinn orchestrated the encounters and that he did not communicate with S.G. directly.

In addition to the testimony of S.G. and Nagy, the State offered a transcript of Quinn's preliminary hearing on the original information and C.G.'s deposition. Quinn argued that the factual circumstances between the sexual encounters with S.G. and alleged encounters with C.G. were too different to be instructive to the jury.

In an order filed June 7, 2021, the district court sustained the State's notice of intent to offer 404 evidence. The court found by clear and convincing evidence that S.G.'s and Nagy's testimony was relevant for the purpose of showing intent, knowledge, and absence of mistake with regard to Quinn's human trafficking counts. The court further observed that the probative value of the testimony substantially outweighed the potential for unfair prejudice. In another order filed the same day, the court denied Quinn's motion in limine related to S.G.'s and Nagy's testimony.

### (c) Pretrial Hearing

A journal entry filed by the district court on June 18, 2021, reflects that a pretrial hearing was held on June 14. The journal entry notes that the State moved to clarify each party's position on the proper venue for trial, and that comments were made by both parties regarding their position. However, the journal entry does not provide the position of each party regarding venue, nor is a bill of exception of the pretrial hearing included in our record. The journal entry also referenced the State's motion to dismiss Count I of the amended information, one of four counts of first degree sexual assault of child. Quinn did not object and the district court ordered the State to file a second amended information. A second amended information was filed by the State on June 16.

- 3 -

## 2. TRIAL

Trial was held over 8 days in June 2021. Over 30 witnesses testified and over 200 exhibits were offered into evidence. We have limited our recitation of the evidence adduced at trial to those details relevant to Quinn's assignments of error on appeal. Additionally, where we offer examples of Quinn's and C.G.'s correspondence and internet search history, we have directly quoted the parties' language.

### (a) State's Evidence

C.G. testified that she was born in October 2003 and spent her early childhood in Nebraska. In the spring of 2019, C.G. was 15 years old and living with family in North Carolina. During that time, Quinn reached out to C.G. through Facebook to ask if C.G. wanted a job waitressing at his café in Oxford, Nebraska. C.G. knew of Quinn as several of her older siblings worked for him in some capacity. C.G. told Quinn that she was interested in the job and the two began daily communication over Facebook, phone calls, and text messages. Within the first 3 days of C.G.'s and Quinn's communication, C.G. told Quinn that she was 16 years old because she believed she needed to be 16 in order to secure the waitressing position. However, a few days later C.G. told Quinn that she was actually 15 years old. Quinn advised that C.G. would be able to work for him no matter her age.

Within the first week of their communication, Quinn asked C.G. for a naked picture of herself. While C.G. initially denied Quinn's request and was "a little creeped out," she began sending Quinn explicit photos of herself a few weeks later because she wanted to leave North Carolina and work for Quinn.

C.G. moved back to Nebraska in the summer of 2019 and text messaged Quinn within 3 days of arriving to let him know that she was ready to begin working as a waitress. Quinn and C.G. made arrangements to meet later that day. Once together, Quinn instructed C.G. to get into his car to talk about the job. Quinn then drove C.G. to a cornfield where he began fondling C.G.'s breasts and buttocks. C.G. testified that she "kind of froze" when Quinn began touching her. After fondling C.G., Quinn pushed C.G.'s head towards his exposed penis and instructed her to perform oral sex on him. C.G. became scared and performed oral sex on Quinn for a few minutes before exiting his car and attempting to walk away. Quinn caught up to C.G. and proceeded to hold a knife to her throat and threaten her life. C.G. testified that she took his threat seriously. Quinn again demanded that C.G. perform oral sex on him and C.G. complied. When C.G. returned to her sister's home later that evening she did not disclose the events of the day because she was scared.

C.G. maintained regular contact with Quinn after their initial meeting out of fear. During the summer of 2019, C.G. testified that she and Quinn had near daily sexual encounters which included oral sex, digital penetration, and penile penetration. C.G. also continued to send Quinn explicit photos and videos of herself. C.G. noted that Quinn "expected" these explicit communications and would scream at C.G. if she did not provide them to him. C.G. testified to occasions when Quinn slapped her in the face. Quinn would also go through C.G.'s cell phone to monitor her correspondence and moved her into a property which he owned.

Also during the summer of 2019, Quinn began instructing C.G. to remove her clothing while driving around town in his car. Quinn would then invite local men to view and touch C.G.'s nude body. Other times, Quinn would advise C.G. to disrobe in front of men or send nude photos

- 4 -

of herself to men over social media. Quinn told C.G. that she needed to engage in commercial sex because she was living in one of his properties rent free.

C.G. testified to Quinn arranging for several men to have sex with her in exchange for money or for Quinn's own sexual gratification. Either Quinn or C.G. under Quinn's direction would inform the men that C.G. was 18 years old. Relevant to the sex trafficking charges are the sexual encounters between C.G. and Terry Smith and Carl Kramer.

C.G. first met Smith in the summer of 2019 when she was a passenger in Quinn's car. Smith and Quinn were chatting when Quinn instructed Smith to touch C.G. and noted that Smith could have sex with C.G. for $50. After Smith digitally penetrated C.G., he handed Quinn $50 and Quinn directed C.G. to follow Smith inside his home. Smith and C.G. had sexual intercourse and afterward C.G. text messaged Quinn to come pick her up from Smith's home. C.G. had repeated sexual encounters with Smith, for which Smith would pay $50 to Quinn directly or to C.G., who would then give the money to Quinn. C.G. testified that Quinn first arranged the commercial sex between C.G. and Smith, but that later C.G. and Smith would communicate with one another directly.

Smith's testimony was largely consistent with C.G.'s, noting that he met C.G. sometime between May and July of 2019. Smith further stated that a month prior to meeting C.G. in Quinn's car, Quinn came to Smith's home to tell him that Quinn had an 18-year-old girl working for him who "wants to make extra money." While Quinn did not specify how the girl was wanting to earn extra money, he also inquired about Smith's sex life and Smith "put two and two together." When Quinn arrived the following month with C.G. in his car, he indicated to Smith that C.G. was the girl he had previously referenced.

Smith admitted that he had repeated sexual encounters with C.G., for which he paid her $50. Smith agreed that he used Snapchat to communicate with C.G. after he gave Quinn his user name. Smith acknowledged that he had entered a plea of no contest to charges related to his commercial sex with C.G.

C.G. testified that she met Kramer in the fall of 2019 when Quinn took C.G. to a meat locker owned by Kramer. Quinn kept pulling up C.G.'s shirt to expose her breasts and instructing Kramer to touch C.G., and told Kramer that he could have sex with C.G. for $50. Quinn then took C.G.'s phone and added Kramer's user name on Snapchat from C.G.'s account. Kramer later communicated with C.G. on Snapchat and arranged for commercial sex in his office at the meat locker. Kramer paid C.G. $50, which Quinn took from C.G. after she returned home. C.G. estimated that she had commercial sex with Kramer five to 10 times. Occasionally, Quinn dropped C.G. off at Kramer's office for their prearranged sexual encounters.

Kramer testified that he first met C.G. in August 2019, when Quinn called Kramer over to his car and C.G. was in the passenger seat and naked below the waist. Kramer also received explicit photos of C.G. on four occasions through Snapchat. In October, Quinn mentioned that married men could have sex with C.G. so long as they "throw $50 at her." Quinn also told Kramer that C.G. was 18 years old.

Kramer testified to Quinn and C.G. coming to his meat locker together. But Kramer stated that in addition to Quinn exposing C.G.'s breasts, "[Quinn] said tell him what you want, and [C.G.] said 'I want him to touch me.' And so I did, and that lasted a minute or two." A few weeks later, C.G. asked Kramer over Snapchat if he wanted to have a sexual encounter with her, which Kramer

- 5 -

declined. However, shortly thereafter, Kramer contacted C.G. and invited her over to his office for sex, assuming that he would have to pay her for the encounter. Kramer estimated that he had commercial sex with C.G. on six occasions, for which he always paid C.G. $50.

Kramer acknowledged that he had pending charges related to his sexual encounters with C.G. and was hoping that his cooperation in Quinn's case would be considered by the State in resolving his own, though he had been given no assurances of that outcome.

Prior to the testimony of S.G. and Nagy, Quinn's attorney renewed her prior objection to the testimony, arguing that the commercial sex between S.G. and Nagy was not sex trafficking and was not related to the alleged crimes at issue in present case. The State argued that the testimony would establish whether Quinn knew that S.G. would receive money from Nagy in exchange for sex, and that the price of commercial sex with S.G. was the same as Quinn set for C.G. The district court overruled Quinn's objection.

The district court provided the jury with a rule 404 instruction, stating that the jury was about to hear evidence concerning sexual encounters between S.G. and Nagy, and that the evidence may only be considered for the "limited and specific purpose" of determining the existence of intent, knowledge, and absence of mistake with regard to the two counts of sex trafficking. The court further instructed the jury that they may not conclude or infer that Quinn is guilty of any of the charges being tried based upon this particular evidence. S.G. and Nagy testified about their sexual encounters consistently with their previous testimony during the evidentiary hearing in May 2021. Quinn had a continuing objection throughout their testimony.

Additionally, S.G. testified that when Quinn first began communicating with C.G. on Facebook in the summer of 2019, Quinn asked her how she knew C.G. S.G. advised that C.G. was one of her younger sisters and when Quinn inquired how old C.G. was, S.G. replied that C.G. was 15 years old. C.G.'s mother also testified that C.G. was born in October 2003.

Other evidence presented by the State included details of law enforcement's investigation. Deputy Alex Huntley of the Furnas County Sheriff's Office testified that in January 2020, C.G.'s brother-in-law contacted the sheriff's office regarding C.G.'s sexual encounters with various local men. Later that day, C.G. identified several men with whom she had sexual encounters and provided a written statement to Huntley. Huntley then executed a search warrant at Quinn's home and office, where officers seized a cell phone, a laptop, and a desktop computer.

The following day, C.G. provided law enforcement with her cell phone and Huntley arranged for her to have a forensic interview conducted by an investigator with the Attorney General's Office who specializes in human trafficking offenses. C.G. also met with a certified sexual assault nurse examiner, who conducted a vaginal exam. Both the investigator and the nurse examiner provided testimony regarding their experience with C.G.

LaTisha Connelly, an analyst with the Nebraska State Patrol, testified that she examined cell phone records, social media accounts, and various electronic devices, including C.G.'s cell phone and Quinn's computers. From March 2019 to January 2020, Quinn and C.G. exchanged over 15,000 text messages, some of which included photos and videos of themselves. Connelly testified that her digital analysis demonstrated Quinn first visited C.G.'s Facebook page in January 2019 and returned to the page many times over the following 3 months. On March 30, 2019, Quinn's internet history shows that he researched Nebraska laws regarding the legal age of consent; searching for terms such as "nebraska statutory law age of consent," "age for child

- 6 -

enticement laws in nebraska," and "nebraska sexual assault statutes." On September 1, 2019, Quinn texted messaged C.G., ". . . I wish you were 18 or 20!" To which C.G. responded, ". . . yea me too. 16 gonna be a lil bit better tho." In October 2019 (on the birthdate testified to by C.G.), Quinn's internet history shows that he searched "sweet 16 sex" and other sexually explicit terms and the number 16. Finally, several photos and videos found on Quinn's computer depicted C.G. engaging in various sexual acts.

At the conclusion of the State's evidence, Quinn moved to dismiss on the basis that the State had failed to make a prima facie case for all counts. The district court denied Quinn's motion to dismiss. Quinn then proceeded to introduce evidence.

### (b) Quinn's Evidence

Paul Brooks, a longtime neighbor and acquaintance of Quinn, testified that C.G. had incorrectly testified that she and Brooks had a sexual encounter in the basement of a specific home. However, on cross-examination, Brooks refused to answer a question regarding text message exchanges with C.G. and his testimony was stricken by the district court. The court also admonished the jury to disregard Brooks' testimony.

S.G.'s husband testified that in November of 2019, he had sexual encounters with C.G. approximately four or five times. C.G. had initiated the encounters and had assured the husband that the encounters were proper, as she had recently turned 16 years old and had researched the legal age of consent in Nebraska. The husband stated that Quinn was not involved in arranging these encounters, nor had C.G. told the husband that she was fearful of Quinn.

Francisco Lemus testified that in September 2019, he and his roofing crew were working on a home close to C.G.'s and C.G. would stand outside and flash her breasts at the crew while they worked. C.G. would also stand nude in front of a window and bang on the glass to attract attention from the crew. Lemus reported the behavior to his boss and was later interviewed by a member of law enforcement in March 2020.

Quinn offered several exhibits, including a certified copy of Smith's plea agreement, which were received into evidence. Quinn also offered the deposition of Bucky Weaver, an unavailable witness, but the State objected to the relevancy of the deposition. The State argued that Weaver had commercial sex with C.G. while she was being trafficked by an individual other than Quinn, and so Weaver's testimony was irrelevant to the proceedings. Quinn argued that C.G. had testified that Weaver had sexually assaulted her, which he denied in his testimony, and that "it goes to the credibility of the accuser, which is always relevant." The district court sustained the State's relevancy objection and did not receive Weaver's deposition. Outside the presence of the jury, Quinn made an offer of proof, highlighting that Weaver would testify that he met C.G. through Smith in August 2019, that C.G. told Weaver that she was 18 years old, and that they engaged in consensual sex.

### (c) Senator Sasse's Letter

On the evening of June 21, 2021, the fourth day of Quinn's trial, various news outlets reported that United States Senator Ben Sasse had written a letter to the Department of Justice requesting their assistance in prosecuting Quinn and his codefendants, whom he referred to as "child rapists." The following morning, Quinn moved for a mistrial or, alternatively, for the district

- 7 -

court and parties to individually poll the jury members to determine if any had been made aware of Sasse's comments. Quinn argued that because the statements from a recognized political figure in Nebraska were "highly inflammatory," he had been "completely stripped" of his constitutional right to a fair and impartial jury trial.

The district court stated that it too was aware of Sasse's comments and was "dismayed by those." The court took Quinn's motion for a mistrial under advisement, pending the individual polling of jury members.

All 14 members of the jury (including the alternates) were questioned by the district court and both counsel as to their knowledge of Sasse's letter and statement. Twelve of the jurors were unaware of Sasse's comments. One juror had seen a reference to Sasse's letter on social media, but quickly scrolled past the post. Another juror had heard mention of a letter written by Sasse related to Furnas County on a news program but had then muted the television and left the room. At the close of each juror's interview, they were personally admonished by the court to not read or listen to any reports regarding the case. Satisfied that the jurors' impartiality had not been compromised by Sasse's comments, the court denied Quinn's motion for mistrial.

After the lunch recess, a third juror advised the district court through a note that during the recess a community member had approached him at a gas station and had started to relay "something he saw or heard about Ben Sasse." The juror stated that he stopped the conversation immediately and had written the note to the court because he presumed the information about Sasse was related to the court's polling that morning. The court shared the juror's note with both parties, who agreed that no further action was required.

### 3. DELIBERATION, VERDICT, AND POSTTRIAL PROCEEDINGS

After 5 hours of deliberation, the jury found Quinn guilty of counts I through III (first degree sexual assault of a child), counts V and VI (sex trafficking of a minor), counts VII through IX (manufacturing a visual depiction of sexually explicit conduct), counts X and XI (possession of a visual depiction of sexually explicit conduct), XII and XIII (enticement by electronic communication device), and count XIV (child abuse). The jury found Quinn not guilty of count IV, first degree sexual assault. Following the jury's return of its verdicts, the district court asked each member of the jury whether Sasse's statements had affected the outcome of the case, and each answered that it had not. The court accepted the verdicts of the jury and ordered a presentence investigation report.

On July 2, 2021, Quinn filed a motion for a new trial, alleging insufficient evidence, legal errors, and that the State, district court, and Sasse caused irregularities in the proceedings. Following a hearing on July 21, the district court denied the motion in a journal entry filed on July 26. In denying Quinn's motion, the court found that Quinn had not been prejudiced by Sasse's comments as only two of the 14 jurors had heard that Sasse had made comments about the case and none had heard any substantive information conveyed in Sasse's comments. The court was additionally satisfied with each juror's assurances that they did not consider Sasse's comments during deliberations. The court allowed Quinn 1 week to supplement the record by offering a copy of Sasse's letter to the Department of Justice as an exhibit. The letter does not appear in our record on appeal.

Certified Page 8 of 17

Quinn's sentencing hearing was held on December 22, 2021. The district court sentenced Quinn to 30 to 50 years' imprisonment on each of counts I through III, V, and VI, noting that for counts I through III, 15 years of each minimum term are the mandatory minimum and Quinn must serve all such 15 years without credit for good time. On each of counts VII through IX, Quinn was sentenced to 15 to 35 years' imprisonment, with 3 years being the mandatory minimum for which Quinn must serve without credit for good time. Quinn was sentenced to 10 to 15 years' imprisonment on both counts X and XI; 9 to 24 months' imprisonment on both counts XII and XIII; and 9 to 27 months on count XIV. The court ordered counts I through III, V, and VI to run consecutively to one another; counts VII through XIII to run concurrently with one another but consecutively to the first five counts, and count XIV to run consecutively to all counts. Quinn was credited with 704 days for time previously served.

Quinn appeals.

## III. ASSIGNMENTS OF ERROR

Quinn assigns, restated and reordered, that the district court erred in (1) admitting rule 404 testimony and not receiving the deposition of an unavailable witness; (2) denying his motion to dismiss; (3) denying his motion for mistrial; and that (4) the evidence was insufficient to support specific convictions; (5) the sentences imposed were excessive; and (6) his trial counsel was ineffective for failing to provide affidavits in support of his motion for change of venue, to enter Sasse's letter in evidence, and to object and stipulating to the admission of electronic devices into evidence.

## IV. ANALYSIS

### 1. EVIDENTIARY RULINGS

We review for abuse of discretion a trial court's evidentiary rulings on relevance, whether the probative value of evidence is substantially outweighed by the danger of unfair prejudice, and the sufficiency of a party's foundation for admitting evidence. *State v. Burries*, 297 Neb. 367, 900 N.W.2d 483 (2017). We also review for abuse of discretion a trial court's evidentiary rulings on the admissibility of a defendant's other crimes or bad acts under rule 404(2), or under the inextricably intertwined exception to the rule. *State v. Burries, supra*. An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*.

### (a) Rule 404 Evidence

Quinn assigns that the district court erred in allowing Nagy and S.G. to testify regarding their alleged sexual encounters at trial. Quinn argues that the State intended to offer evidence that Quinn had arranged for Nagy and S.G. to have commercial sexual encounters on three occasions, but that the testimony was not intertwined with the alleged offenses related to C.G. Moreover, Quinn contends that the testimony was extremely prejudicial and "very likely gave the jury a false impression concerning any motives or intent. . . ." Brief for appellant at 20.

Neb. Rev. Stat. § 27-403 (Reissue 2016) states, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice,

- 9 -

confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Neb. Rev. Stat. § 27-404(2) (Reissue 2016) provides the following:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Neb. Rev. Stat. § 28-830(12) (Cum. Supp. 2020) defines sex trafficking of a minor as "knowingly recruiting, enticing, harboring, transporting, providing, soliciting, or obtaining by any means . . . a minor for the purpose of having such minor engage in commercial sexual activity . . ." Therefore, whether Quinn had the intent to have C.G. engage in commercial sex was a question before the jury.

At trial, Nagy and S.G. both testified that Quinn had facilitated their three commercial sexual encounters. Quinn initially approached both Nagy and S.G. about having a sexual encounter with one another, instructed Nagy to pay S.G. $50 for the encounters, and provided S.G. with transportation to and from Nagy's home.

The sexual encounters between S.G. and Nagy, and between C.G. and Smith and Kramer, have several similarities that bear on Quinn's intent to traffic C.G. Both Smith and Kramer testified that they were introduced to C.G. by Quinn, that Quinn initially proposed that the men have commercial sex with C.G., and that Quinn informed the men that the sexual encounters would cost $50. Quinn also transported C.G. to Smith's home and to Kramer's office before offering commercial sex with C.G.

We conclude that the district court did not abuse its discretion by admitting the testimony of S.G and Nagy to show intent, knowledge, and absence of mistake with regard to the two counts of sex trafficking of a minor under rule 404(2). We also note that the probative value of the testimony was not outweighed by the danger of unfair prejudice, as the district court instructed the jury to only consider the testimony for the prescribed limited and specific purpose, and not to infer that Quinn is guilty of any charges based upon S.G.'s and Nagy's testimony. See *State v. Davis*, 290 Neb. 826, 834, 862 N.W.2d 731, 737 (2015) (an admonishment of the jury is typically sufficient to cure any prejudice).

Lastly, though Quinn argues that the commercial sexual encounters between Nagy and S.G. are not intertwined with the alleged offenses related to C.G., under our decisional law, the evidence must be inextricably intertwined with the charged crime only if rule 404(2) does not apply. See *State v. Burries, supra.* As we have found that the district court did not abuse its discretion by admitting the testimony under the exceptions of rule 404(2), we need not consider whether the various sexual encounters were inextricably intertwined. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *State v. Moore*, 312 Neb. 263, 978 N.W.2d 327 (2022). This assignment of error fails.

### (b) Weaver Deposition

Quinn next assigns that the district court erred by not admitting Weaver's deposition into evidence, finding that it was not relevant. Quinn argues that he sought to use Weaver's deposition

- 10 -

to show that C.G.'s testimony lacked credibility. Quinn further contends that the exclusion of Weaver's deposition violated his right to present a complete defense and to a fair trial.

All relevant evidence is admissible except as otherwise provided by law, and evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. See Neb. Rev. Stat. § 27-401 (Reissue 2016). The bar for establishing evidentiary relevance is not a high one and requires only the probative value of the evidence to be something more than nothing. *State v. Abligo*, 312 Neb. 74, 978 N.W.2d 42 (2022).

Quinn argues that C.G.'s credibility is relevant to the counts of first degree sexual assault of a child. However, while Quinn contends that C.G. telling Weaver that she was 18 years old in September 2019 was central to his defense, the possibility that a child has engaged in active concealment or misrepresentation of age does not exculpate a perpetrator who is accused of first degree sexual assault of a child under § 28-319(1)(c). *State v. Campbell*, 239 Neb. 14, 473 N.W.2d 420 (1991). We find below that the evidence was sufficient to prove that C.G. was 15 years old in September 2019, and thus her alleged misrepresentation to Weaver regarding her age does not amount to exculpatory evidence. Weaver's deposition is therefore not relevant to evaluate C.G.'s credibility on these counts.

Quinn next argues that C.G.'s credibility is relevant to the counts of human trafficking. Credibility of a witness is not at issue when the truth of the assertions are not in dispute. *State v. Wood*, 310 Neb. 391, 394, 966 N.W.2d 825, 831 (2021). Here, the involvement of Quinn in C.G.'s commercial sex is in dispute, as C.G.'s testimony places him at the center of the arrangements and Quinn contends that C.G. initiated her own sexual encounters without Quinn's involvement. Given the low bar for relevancy, Weaver's deposition was relevant to C.G.'s credibility regarding the counts of human trafficking.

However, Weaver's deposition was properly excluded from evidence because his testimony likely would have caused confusion of the issues for the jury. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of confusion of the issues. See § 27-403. When the State objected on the basis of relevancy, Quinn responded by arguing that Weaver's testimony would undermine C.G.'s accusation that Weaver had sexually assaulted her, diminishing her credibility as a witness. However, Weaver's testimony would have likely confused the issues as it related to C.G.'s accusation of sexual assault against Weaver, not Quinn. Additionally, using an alleged sexual assault perpetrated by an individual other than Quinn as the metric by which to assess C.G.'s credibility would be confusing given the variety of sexual crimes and participants discussed during the trial. Thus, although relevant, the probative value of Weaver's testimony was outweighed by the danger that it would confuse the issues at trial.

Quinn generally argues that Weaver's testimony regarding C.G.'s representation of her age as 18 and that Quinn did not arrange this encounter would have aided his defense. However, multiple witnesses, including C.G., testified that C.G. communicated to men that she was 18 years old and that she arranged for some sexual encounters directly. Thus, to the extent the exclusion of Weaver's deposition was error, it was harmless. In a jury trial of a criminal case, harmless error exists when there is some incorrect conduct by the trial court which, on review of the entire record,

- 11 -

Certified Page 11 of 17

did not materially influence the jury in reaching a verdict adverse to a substantial right of the defendant. See *State v. Madren*, 308 Neb. 443, 954 N.W.2d 881 (2021).

The right to present a complete defense does not allow a defendant "an unfettered right to offer testimony that is . . . otherwise inadmissible under standard rules of evidence." *State v. McCurry*, 296 Neb. 40, 66, 891 N.W.2d 663, 681 (2017). Weaver's deposition testimony was properly excluded for the reasons set forth above. A correct result will not be set aside merely because the lower court applied the wrong reasoning in reaching that result. *State v. Burries*, 310 Neb. 688, 969 N.W.2d 96 (2022). This assignment of error fails.

### 2. MOTION TO DISMISS

Quinn challenges the denial of his motion to dismiss. After the district court overruled Quinn's motion to dismiss all counts, the defense proceeded to call witnesses and offer exhibits. A defendant who moves for dismissal or a directed verdict at the close of the evidence in the State's case in chief in a criminal prosecution and who, when the court overrules the dismissal or directed verdict motion, proceeds with trial and introduces evidence, waives the appellate right to challenge correctness in the trial court's overruling the motion for dismissal or a directed verdict but may still challenge the sufficiency of the evidence. *State v. Guzman*, 305 Neb. 376, 377, 940 N.W.2d 552, 556 (2020). By proceeding to introduce evidence after the motion to dismiss was overruled, Quinn waived the right to challenge the district court's ruling on appeal.

### 3. MOTION FOR MISTRIAL

Quinn asserts that the district court erred by denying his motion for mistrial. He argues that the jury was tainted due to Sasse's letter and the resulting media coverage. Quinn also contends that the district court's questioning of the jurors actually "contributed to the jurors knowing about [Sasse] writing such a letter by engaging them in specific questioning about the letter." Brief for appellant at 25.

Decisions regarding motions for mistrial are directed to the discretion of the trial court and will be upheld in the absence of an abuse of discretion. *State v. Madren, supra*. A mistrial is properly granted in a criminal case where an event occurs during the course of trial which is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial. *State v. Figures*, 308 Neb. 801, 957 N.W.2d 161 (2021). Error cannot ordinarily be predicated on the failure to grant a mistrial if an objection or motion to strike the improper material is sustained and the jury is admonished to disregard such material. *State v. Briggs*, 303 Neb. 352, 929 N.W.2d 65 (2019). The defendant must prove that the alleged error actually prejudiced him or her, rather than creating only the possibility of prejudice. *Id.* Extraneous material or information considered by a jury can be prejudicial without proof of actual prejudice if (1) the material or information relates to an issue submitted to the jury and (2) there is a reasonable possibility that it affected the jury's verdict to the challenger's prejudice. *State v. McSwine*, 24 Neb. App. 453, 890 N.W.2d 518 (2017).

In this case, the district court questioned each juror individually about any exposure to the Sasse letter and the news coverage in question. Twelve of the 14 jurors had no knowledge of either, while one "saw something on Facebook but scrolled right by it," and the other saw a newscast reference to the letter but immediately muted his television and left the room. In the hours after

- 12 -

the district court's questioning, another juror advised the court that during the lunch hour a local resident had approached him and started to relay something the resident had heard about Sasse. The juror stopped the conversation immediately and upon returning to the courthouse, wrote a note to the court advising it of the interaction. The court shared the juror's note with counsel for both parties, who agreed that no further action was required. The court admonished the jury multiple times throughout the trial not to read anything about the case or talk to any of the other jurors about the case until deliberations. "An admonishment of the jury is typically sufficient to cure any prejudice." *State v. Davis*, 290 Neb. 826, 834, 862 N.W.2d 731, 737 (2015). Further, absent evidence to the contrary, it is presumed that a jury followed the instructions given in arriving at its verdict. *State v. Henderson*, 301 Neb. 633, 920 N.W.2d 246 (2018).

Quinn cannot show that he was prejudiced by Sasse's letter and the resulting media coverage during his trial. There is no indication that the three jurors discussed above, or any of the other jurors, failed to follow the district court's instructions. There is nothing to show that the three jurors' exposure to a social media post, news coverage, or community conversation about Sasse's letter influenced the jury so as to taint the outcome of the case. We also note that none of the three jurors had actually seen or read Sasse's letter. The district court did not err in denying Quinn's motion for mistrial. This assignment of error fails.

### 4. SUFFICIENCY OF EVIDENCE

Quinn asserts that there was insufficient evidence to support the majority of his convictions. Quinn argues that C.G.'s age was a necessary element to obtain a conviction for first degree sexual assault of a child, human trafficking of a minor, possession of visual depiction of sexually explicit conduct, enticement by an electronic communication device, and child abuse. Quinn contends that the State did not prove C.G.'s age beyond a reasonable doubt and therefore his convictions of the above counts should be reversed.

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Miller*, 312 Neb. 17, 978 N.W.2d 19 (2022). The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

That the victim is a certain age at the time of the offense is a necessary element of the crimes Quinn references in his argument. See, § 28-319.01(1)(b) (an element of first degree sexual assault of a child is that the victim is at least 12 but less than 16 years old); § 28-830(10) (an element of human sex trafficking of a minor is that the victim is less than 18 years old); § 28-813.01(1) (an element of possession of visual depiction of sexually explicit conduct is that the victim participant is a child, defined as less than 18 years old by Neb. Rev. Stat. § 28-1463.02(1) (Reissue 2016)); § 28-833 (an element of enticement by an electronic communication device is that the victim is less than 16 years old); § 28-707 (an element of child abuse is that the victim is a minor child, defined as less than 19 years old by Neb. Rev. Stat. § 43-2101(1) (Cum. Supp. 2020)).

- 13 -

The jury found that the State had sufficiently proven C.G.'s age in order to convict Quinn of all counts where the victim's age is an element of the crime. Both C.G. and her mother testified that C.G.'s birthday was in October 2003, making her 15 years old at the time of Quinn's communications with, and assaults on, C.G. Quinn argues that the State failed to produce definitive proof of C.G.'s age through a certified birth certificate or other document and that both C.G. and her mother lacked credibility. The credibility and weight of witness testimony are for the jury to determine, and witness credibility is not to be reassessed on appellate review. *State v. Tucker*, 301 Neb. 856, 870, 920 N.W.2d 680, 690 (2018).

Though no birth certificate or documentation was furnished at trial to prove C.G.'s date of birth, the record contains evidence beyond the testimony of C.G. and her mother that C.G. was 15 years old during the summer and early fall of 2019. That evidence includes S.G.'s testimony that she relayed to Quinn that C.G. was 15 years old in early 2019; text messages dated September 1, 2019, in which Quinn wished C.G. was 18 or 20, and C.G. agreed but suggested "16 gonna b a lil bit better;" and Quinn's internet history, which showed that on the date of C.G.'s birth as testified to by C.G. and her mother, Quinn searched for "sweet 16 sex" and other terms related to sexual acts and the age 16. Viewed in the light most favorable to the prosecution, the evidence was sufficient to establish that C.G. was 15 during the time of the offenses. This assignment of error fails.

### 5. EXCESSIVE SENTENCE

Quinn was convicted of five Class IB felonies, three Class ID felonies, two Class IIA felonies, two Class IV felonies, and a Class IIIA felony. A Class IB felony is punishable by a minimum of 20 years and a maximum of life imprisonment. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2020). However, three of Quinn's Class IB felonies result from his convictions for first degree sexual assault of a child pursuant to § 28-319.01, which sets forth a mandatory minimum sentence of 15 years' imprisonment for the first offense. See, also, *State v. Russell*, 291 Neb. 33, 863 N.W.2d 813 (2015) (minimum sentence for first degree sexual assault of a child is 15 years' imprisonment). Quinn was sentenced to consecutive terms of 30 to 50 years' imprisonment for the five Class IB felonies (sexual assault of child and sex trafficking of minor). A Class ID felony is punishable by a mandatory minimum of 3 years and a maximum of 50 years' imprisonment. See § 28-105. Quinn was sentenced to concurrent terms of 15 to 35 years' imprisonment on the three Class ID felonies (manufacturing visual depiction of sexually explicit conduct). A Class IIA felony is punishable by up to 20 years' imprisonment. *Id.* Quinn was sentenced to concurrent terms of 10 to 15 years' imprisonment on the two Class IIA felonies (possession of visual depiction of sexually explicit conduct). A Class IV felony is punishable by up to 2 years' imprisonment and 12 months' post-release supervision, a fine of $10,000, or both. *Id.* Quinn was sentenced to concurrent terms of 9 months to 24 months' imprisonment on the Class IV felonies (enticement by electronic communication). A Class IIIA felony is punishable by up to 3 years' imprisonment, a fine of $10,000, or both. *Id.* Quinn was sentenced to 9 to 27 months' imprisonment on the Class IIIA felony (child abuse). The Class ID, Class IIA, and Class IV felonies were ordered to run consecutively to the sentences for the Class IB felonies and the Class IIIA felony was to be served consecutively to all other sentences imposed. Quinn's sentences were within statutory limits.

- 14 -

Absent an abuse of discretion by the trial court, an appellate court will not disturb a sentence imposed within the statutory limits. *State v. Grant*, 310 Neb. 700, 968 N.W.2d 837 (2022). When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022). The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Quinn argues that the district court did not adequately consider that he was a local business man in a rural community, had spent years around his daughters and their friends without incident, and was not fully aware of the victim's age or her lack of consent. Quinn also contends that the court sentenced him to the functional equivalent of life imprisonment. He argues that the court erred in not ordering Quinn's sentences to be served concurrently, as all of Quinn's crimes "occurred from the same nucleus of operative fact and transaction." Brief for appellant at 27.

The presentence investigation report (PSI) prepared in this case indicates that Quinn was 57 years old at the time of the offense, has some college education, and was working in construction. His criminal history includes convictions for possession of methamphetamine with intent to deliver, third degree sexual assault, driving under the influence, reckless driving, and various speeding violations. Quinn was assessed under the Vermont Assessment of Sex Offender Risk tool and scored a 30 on the reoffense risk scale and a 55 on the severity scale, indicating a high risk to recidivate. Quinn scored in the medium/low risk to reoffend on the overall LS/CMI assessment.

At the sentencing hearing, the district court stated that it had reviewed the lengthy PSI, had considered Quinn's comments and the comments of counsel, and had read the numerous letters of support submitted on Quinn's behalf. The court stated that it considered the relevant statutory factors, including Quinn's age, education, mentality, past criminal record and motivation for the offense as well as the nature of the offense. The court noted that Quinn's crimes had caused serious harm and that Quinn's character and attitudes indicated a likelihood of reoffending. It is clear that the court considered the appropriate factors in sentencing Quinn.

While Quinn argues that the district court should have imposed concurrent sentences, we note that the district court ordered counts VII-XIII to be served concurrently with one another. Further, it is within the discretion of the trial court to impose consecutive rather than concurrent sentences for separate crimes even when crimes arise out of same incident. *State v. Artis*, 296 Neb. 172, 893 N.W.2d 421 (2017), *modified on denial of rehearing*, 296 Neb. 606, 894 N.W.2d 349. Thus, we find no abuse of discretion in the sentences imposed.

### 6. INEFFECTIVE ASSISTANCE OF COUNSEL

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Drake*, 311 Neb. 219, 971 N.W.2d 759 (2022). In

- 15 -

reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id*.

Quinn has different counsel on direct appeal than he did at trial. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the ineffective assistance of trial counsel issue will be procedurally barred. *Id*.

Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id*. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id*. Conversely, an ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *Id*.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. John*, 310 Neb. 958, 969 N.W.2d 894 (2022). To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. *Id*. To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. *State v. John, supra.* A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome. *Id*. The two prongs of this test may be addressed in either order, and the entire ineffectiveness analysis should be viewed with a strong presumption that counsel's actions were reasonable. *Id*.

### (a) Failure to Offer Affidavits

Quinn claims that his counsel was ineffective for failing to support his motion for change of venue with affidavits from residents of Furnas County, "that indicated opinions of [Quinn] and his guilty [sic] for the crimes charged." Brief for appellant at 16. However, Quinn does not specifically allege that residents of Furnas County had negative opinions of him or that they had already determined his guilt for the crimes. We also note that while the issue of venue was further discussed at the pretrial conference, we do not know the position taken by Quinn at that time. Further, Quinn participated in voir dire and has not alleged that he was unable to select an impartial jury. Quinn has not assigned any error related to the jury selection process. Voir dire examination is a better and more probative forum for ascertaining the existence of community and individual prejudice or hostility toward an accused than even a public opinion poll. *State v. Tucker*, 242 Neb. 336, 337, 494 N.W.2d 572, 574 (1993). Quinn has not demonstrated that his counsel was deficient in failing to offer affidavits from members of the Furnas County community. We also find that

- 16 -

Quinn cannot show that counsel's failure to provide affidavits from local residents was prejudicial to his ability to obtain a fair and impartial jury. Therefore, this claim fails.

### (b) Failure to Offer Sasse's Letter

Next, Quinn claims that his counsel was ineffective for failing to offer Sasse's letter into evidence for the record on appeal. Quinn argues that, "[w]ithout the actual statement of Senator Sasse being made part of the record, it is impossible for an Appellate court to properly review the circumstances of the matter" for the purpose of evaluating the district court's determination on Quinn's motion for mistrial. Brief for appellant at 17. But as we noted in our analysis above, no members of the jury had seen or read Sasse's letter, nor were any jurors generally aware of the contents of the letter. Therefore, Quinn is unable to show that the inclusion of the letter in our record was necessary for the resolution of his claims. Because Quinn cannot show prejudice, this claim fails.

### (c) Failure to Challenge Foundation for Electronics

Finally, Quinn claims that his counsel was ineffective for failing to object to various electronic exhibits and for stipulating to foundational requirements for their admission into evidence. However, the stipulations made by Quinn's counsel were limited to the lab technicians who extracted data from C.G.'s cell phone and Quinn's laptop hard drive. All other foundational requirements for those items, including the chain of custody, were established through testimony at trial. Proof that an exhibit remained in the custody of law enforcement officials is sufficient to prove a chain of possession and is sufficient foundation to permit its introduction into evidence. See *State v. Grant*, 293 Neb. 163, 876 N.W.2d 639 (2016).

We also reject Quinn's argument that his counsel was ineffective for failing to object to the admissibility of all electronic devices simply because the charges against him were serious. Quinn does not argue that the electronic exhibits were compromised or corrupted in any way, only that counsel was "per se" ineffective for failing to object. Defense counsel does not perform in a deficient manner simply by failing to make the State's job more difficult. *State v. Ash*, 293 Neb. 583, 878 N.W.2d 569 (2016). Given that Quinn is unable to show deficient performance, this claim also fails.

### V. CONCLUSION

Viewing the evidence in the light most favorable to the prosecution, we conclude that the evidence was sufficient to support Quinn's convictions and find no abuse of discretion in the sentences imposed. We find the district court did not abuse its discretion in allowing rule 404 testimony at trial and excluding the deposition of an unavailable witness. We find no abuse of discretion in the denial of Quinn's motion for a mistrial and find that he waived his challenge to the court's denial of his motion to dismiss after the State rested. We determine that the record is sufficient to evaluate and reject Quinn's claims of ineffective assistance of counsel. We therefore affirm the convictions and sentences.

AFFIRMED.

- 17 -

CERTIFIED COPY

Page    Document                                          Date
  1    Web Memo Opinion                                   12/06/2022

I, Wendy A. Wussow, Clerk of the Nebraska Supreme Court, certify that I
have compared the following    17 page(s) to be a full, true, and correct
copy of the original record on file.

Court of Appeals No: A-21-1038
Caption:                State v. William J Quinn
Trial Court:            Furnas County District Court
Trial Court No:         CR20-38

IN TESTIMONY WHEREOF, I have placed my signature and seal of said court.

Date:   December  6, 2022    BY THE COURT:_____
                                                            CLERK

FILED
February 17, 2026
IMAGE ID N2604817INSC, FILING ID 0000043810

CLERK
NEBRASKA SUPREME COURT
COURT OF APPEALS

IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. QUINN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

WILLIAM J. QUINN, APPELLANT.

Filed February 17, 2026.    No. A-25-215.

Appeal from the District Court for Furnas County: PATRICK M. HENG, Judge. Affirmed.

William J. Quinn, pro se.

Michael T. Hilgers, Attorney General, and Melissa R. Vincent for appellee.

MOORE, BISHOP, and WELCH, Judges.

MOORE, Judge.

### INTRODUCTION

William J. Quinn appeals from the order of the district court for Furnas County, which denied his motion for postconviction relief without an evidentiary hearing. For the reasons set forth herein, we affirm.

### STATEMENT OF FACTS

This case arose out of a relationship between Quinn, born April 1964, and C.G., born October 2003. Quinn and C.G. began communicating over social media in March 2019 and developed a sexual relationship in June when C.G. moved back to Nebraska.

On July 8, 2020, the State filed an amended information which charged Quinn with four counts of first degree sexual assault of a child in violation of Neb. Rev. Stat. § 28-319.01(1)(b) (Reissue 2016), a Class IB felony; one count of first degree sexual assault in violation of Neb. Rev. Stat. § 28-319 (Reissue 2016), a Class II felony; two counts of sex trafficking of a minor in

- 1 -

violation of Neb. Rev. Stat. § 28-830 (Cum. Supp. 2020), a Class IB felony; three counts of manufacturing a visual depiction of sexually explicit conduct in violation of Neb. Rev. Stat. § 28-1463.03(1) (Reissue 2016), a Class ID felony; two counts of possession of a visual depiction of sexually explicit conduct in violation of Neb. Rev. Stat. § 28-813.01(1) (Cum. Supp. 2020), a Class IIA felony; two counts of enticement by an electronic communication device in violation of Neb. Rev. Stat. § 28-833 (Reissue 2016), a Class IV felony; and one count of child abuse in violation of Neb. Rev. Stat. § 28-707 (Cum. Supp. 2020), a Class IIIA felony. Quinn thereafter entered a plea of not guilty to all charges set forth in the amended information and waived a preliminary hearing related to the amended information.

A jury trial was held over 8 days in June 2021. The jury found Quinn guilty of counts I through III (first degree sexual assault of a child), counts V and VI (sex trafficking of a minor), counts VII through IX (manufacturing a visual depiction of sexually explicit conduct), counts X and XI (possession of a visual depiction of sexually explicit conduct), counts XII and XIII (enticement by electronic communication device), and count XIV (child abuse). The jury found Quinn not guilty of count IV, first degree sexual assault.

Quinn was subsequently sentenced to 30 to 50 years' imprisonment on each of counts I through III, V, and VI, noting that for counts I through III, 15 years of each minimum term are the mandatory minimum, and Quinn must serve all such 15 years without credit for good time. On each of counts VII through IX, Quinn was sentenced to 15 to 35 years' imprisonment, with 3 years being the mandatory minimum for which Quinn must serve without credit for good time. Quinn was sentenced to 10 to 15 years' imprisonment on both counts X and XI; 9 to 24 months' imprisonment on both counts XII and XIII; and 9 to 27 months on count XIV. The court ordered counts I through III, V, and VI to run consecutively to one another; counts VII through XIII to run concurrently with one another but consecutively to the first five counts; and count XIV to run consecutively to all counts.

On direct appeal, Quinn assigned that the district court erred in (1) admitting rule 404 testimony and not receiving the deposition of an unavailable witness; (2) denying his motion to dismiss; and (3) denying his motion for mistrial. He further assigns that (4) the evidence was insufficient to support specific convictions; (5) the sentences imposed were excessive; and (6) his trial counsel was ineffective for failing to provide affidavits in support of his motion for change of venue, to enter a letter by United States Senator Ben Sasse to the Department of Justice requesting their assistance in prosecuting Quinn and his codefendants into evidence, and to object to various electronic exhibits and for stipulating to foundational requirements for their admission into evidence. This court affirmed Quinn's convictions and sentences in a memorandum opinion on December 6, 2022, in case No. A-21-1038.

On December 4, 2023, Quinn, now self-represented, filed a motion for postconviction relief, setting forth 10 claims for relief. Quinn first alleged that trial counsel was ineffective for failing to (a) offer Sasse's letter into evidence; (b) call various witnesses to testify, including Quinn; (c) move to suppress evidence obtained from social media; (d) offer additional evidence to support his motion to change venue; and (e) object to certain jurors and to the jury selection procedure. He further alleged his trial counsel was ineffective for (f) "rushing through his defense" so that counsel could "make a timely transfer of law firms."

- 2 -

Second, Quinn alleged 14 instances of prosecutorial misconduct regarding the investigation and presentation of the case to the jury.

Third, Quinn alleged that the district court erred by admitting rule 404 testimony regarding C.G.'s commercial sexual encounters with another individual.

Fourth, Quinn alleged that the evidence was insufficient to support his convictions as the State failed to prove C.G.'s age.

Fifth, Quinn alleged that the district court erred by refusing to admit a deposition into evidence for the purposes of impeaching C.G.

Sixth, Quinn alleged that the district court erred by refusing to allow trial counsel to cross-examine a witness regarding his previous conduct with teenage girls.

Seventh, Quinn alleged that his appellate counsel was ineffective for failing to raise the issues that he wished to present on his direct appeal and for failing to advise him that he could file a petition for further review to the Nebraska Supreme Court.

Eighth, Quinn alleged that his trial counsel was ineffective for failing to raise multiple trial irregularities in his motion for a new trial. These alleged irregularities included that multiple sidebars and conferences in chambers were held out of the presence of the jury, the jurors were exposed to negative public sentiment regarding Quinn, and the presence of the Attorney General and members of his office at trial created a prejudicial influence.

Ninth, Quinn alleged that the district court erred by failing to appoint counsel to represent him in his postconviction case.

Finally, Quinn alleged that the district court abused its discretion by imposing an excessive sentence.

On January 4, 2024, the State filed a response to Quinn's postconviction motion, asserting that Quinn's claims were procedurally barred or insufficiently plead.

On February 24, 2024, the district court entered an order denying Quinn's motion for postconviction relief without an evidentiary hearing. The court found that most of Quinn's claims could have been litigated on direct appeal and thus were procedurally barred. The court also found that trial counsel was either not ineffective, or Quinn could not show prejudice, and accordingly, his appellate counsel was not ineffective for failing to raise the additional issues of ineffective assistance of trial counsel.

Quinn appeals.

## ASSIGNMENTS OF ERROR

Quinn assigns that the district court erred by (1) abusing its discretion in denying his verified motion for postconviction relief without considering or holding an evidentiary hearing in violation of his constitutional and statutory rights; (2) not providing the indigent defendant counsel as required under the Nebraska Postconviction Act; and (3) not addressing all of the issues claimed in his motion for postconviction relief and avoiding the merits of the issues by holding the indigent, pro se defendant to the same standards as a professional lawyer.

## STANDARD OF REVIEW

In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his

- 3 -

or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Goynes*, 318 Neb. 413, 16 N.W.3d 373 (2025).

Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law which an appellate court reviews independently of the lower court's ruling. *State v. Harms*, 315 Neb. 445, 996 N.W.2d 859 (2023).

Failure to appoint counsel in postconviction proceedings is not error in the absence of an abuse of discretion. *State v. Epp*, 299 Neb. 703, 910 N.W.2d 91 (2018).

## ANALYSIS

*Denial of Postconviction Relief Without Evidentiary Hearing.*

Quinn asserts that the district court erred in denying his motion for postconviction relief without an evidentiary hearing. However, Quinn's argument in this regard presents limited support for appellate review. Quinn argues that the pleading requirements for postconviction motions are "extremely prejudicial" to him as a pro se postconviction defendant and contends that his allegations were sufficient to warrant an evidentiary hearing. Brief for appellant at 12. Quinn fails to specifically discuss any of the claims made in his motion for postconviction relief or how they merit an evidentiary hearing. He simply argues that his motion was clear enough to warrant a hearing to allow all evidence to be presented.

The appellate court does not conduct an appeal of a postconviction review sua sponte; as with all appeals, the alleged errors of the lower court must be both specifically assigned and specifically argued in the brief of the party asserting the errors to be considered by the appellate court. The appellate court will not scour the record on appeal to understand unclear arguments or find support for broad conclusions. *State v. Jennings*, 312 Neb. 1020, 982 N.W.2d 216 (2022). Conclusory assertions unsupported by coherent analytical argument fail to satisfy the requirement of arguing an assigned error to obtain consideration by an appellate court. *State v. Boppre*, 315 Neb. 203, 995 N.W.2d 28 (2023).

Quinn has failed to satisfy the requirement that the party asserting an alleged error must both specifically assign and specifically argue it in the party's initial brief. This claim fails for this reason alone. However, for the sake of completeness, we also find that the district court did not err in denying an evidentiary hearing.

Postconviction relief is a very narrow category of relief, available only to remedy prejudicial constitutional violations that render the judgment void or voidable. *State v. Davis*, 317 Neb. 59, 8 N.W.3d 247 (2024). The allegations in a motion for postconviction relief must be sufficiently specific for the district court to make a preliminary determination as to whether an evidentiary hearing is justified. *State v. Goynes, supra.* An evidentiary hearing is required on a motion for postconviction relief unless: (1) the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights rendering the judgment void or voidable; (2) the motion alleges only conclusions of fact or law without supporting facts; or (3) the records and files affirmatively show that the defendant is entitled to no relief. *Id.*

Claim Nos. 2, 6, 8, and a majority of 1 (except for the allegation regarding Sasse's letter) were known to Quinn at the time of his direct appeal and thus could have been raised but were not. The need for finality in the criminal process requires that a defendant bring all claims for relief at the first opportunity. *State v. Lotter*, 311 Neb. 878, 976 N.W.2d 721 (2022). When an issue could

- 4 -

have been raised on direct appeal, it is procedurally barred from postconviction relief, no matter how the issues may be phrased or rephrased. *Id.* Thus, these claims are procedurally barred.

Claim Nos. 3, 4, 5, 10, and part of 1 (alleging that trial counsel was ineffective for failing to offer Sasse's letter into evidence) were decided against Quinn on direct appeal. A defendant cannot use a motion for postconviction relief to collaterally attack issues that were decided against him or her on direct appeal. *State v. Thorpe*, 290 Neb. 149, 858 N.W.2d 880 (2015). These claims are likewise procedurally barred.

Claim No. 9 does not implicate a constitutional right. There is no federal or state constitutional right to an attorney in state postconviction proceedings. *State v. Custer*, 298 Neb. 279, 903 N.W.2d 911 (2017). As such an evidentiary hearing on this claim was not required.

In his postconviction claim No. 7, Quinn raises an allegation of ineffective assistance of appellate counsel, arguing that his appellate counsel was ineffective in failing to raise the issues that he wished to present on direct appeal and for further failing to advise him that he could file a petition for further review. Because Quinn's appellate counsel was the same as his trial counsel, this postconviction proceeding was Quinn's first opportunity to assert the ineffectiveness of his appellate counsel. A claim of ineffective assistance of appellate counsel which could not have been raised on direct appeal may be raised on postconviction review. *State v. Stelly*, 308 Neb. 636, 955 N.W.2d 729 (2021).

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Betancourt-Garcia*, 317 Neb. 174, 9 N.W.3d 426 (2024). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The likelihood of a different result must be substantial, not just conceivable. *State v. Lessley*, 312 Neb. 316, 978 N.W.2d 620 (2022). The two prongs of the test under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), may be addressed in either order, and the entire ineffectiveness analysis should be viewed with a strong presumption that counsel's actions were reasonable. *State v. Cox*, 314 Neb. 104, 989 N.W.2d 65 (2023).

In his postconviction motion, Quinn alleged that he sent a letter to his appellate counsel in which he "outlined the issues he wished to present and numbered them 1 [through] 24." Quinn contends that his appellate counsel declined to "address several issues brought to his attention" in a response letter to Quinn. Quinn then quotes extensively from his appellate counsel's letter to him.

However, Quinn's motion for postconviction relief fails to allege sufficient facts that would support this claim of ineffective assistance of appellate counsel. See *State v. Goynes, supra.* Quinn did not attach a copy of his own letter to his appellate counsel to his motion. Nor did Quinn include any language from his own letter in his motion or otherwise specify the claims he brought up to appellate counsel. We are therefore unable to determine which claims Quinn's appellate counsel allegedly declined to address through Quinn's direct appeal. This claim fails.

- 5 -

In his postconviction motion, Quinn also alleged that his appellate counsel was ineffective for failing to file a petition for further review and for failing to advise Quinn of his right to such. The Nebraska Supreme Court has held that a defendant does not have a constitutional right to counsel beyond the conclusion of his or her direct appeal and that therefore, he or she cannot be deprived of effective assistance of counsel based on the failure of counsel to timely file a petition for further review. See *State v. Crawford*, 291 Neb. 362, 865 N.W.2d 360 (2015), *disapproved on other grounds, State v. Burries*, 310 Neb. 688, 969 N.W.2d 96 (2022). Therefore, this claim also fails, and an evidentiary hearing was not required.

*Alleged Failure to Appoint Postconviction Counsel.*

Next, Quinn assigns that the district court erred by failing to provide him with counsel, as required by the Nebraska Postconviction Act.

As set out above, there is no federal or state constitutional right to an attorney in state postconviction proceedings. See *State v. Custer, supra*. Under the Nebraska Postconviction Act, Neb. Rev. Stat. § 29–3001 et seq. (Cum. Supp. 2024), it is within the discretion of the trial court whether to appoint counsel to represent the defendant. *State v. Wetherell*, 289 Neb. 312, 855 N.W.2d 359 (2014), *disapproved on other grounds, State v. Goynes, supra*. When the defendant's motion presents a justiciable issue to the district court for postconviction determination, an indigent defendant is entitled to the appointment of counsel. Where the assigned errors in the postconviction motion before the district court are either procedurally barred or without merit, establishing that the postconviction proceeding contained no justiciable issue of law or fact, it is not an abuse of discretion to fail to appoint counsel for an indigent defendant. *Id.*

As we have found above, Quinn has not alleged facts sufficient to entitle him to an evidentiary hearing on his postconviction claims. Quinn has raised no justiciable issue of law or fact, and therefore, the district court did not abuse its discretion when it did not appoint counsel.

*Alleged Failure to Address Claims Raised in Postconviction Motion.*

Finally, Quinn assigns that the district court erred by not addressing all of the issues claimed in his motion for postconviction relief and avoiding the merits of the issues by holding an indigent, pro se defendant to the same standards as a professional lawyer.

Quinn does not identify which claims the district court allegedly failed to address in its denial of postconviction relief without an evidentiary hearing. Where an appellant's brief contains conclusory assertions unsupported by coherent analytical argument, the appellant fails to satisfy the requirement that a party asserting alleged error must both specifically assign and specifically argue it in the party's initial brief. *State v. Ramos*, 319 Neb. 511, 23 N.W.3d 640 (2025). We therefore decline to address this assertion further.

Additionally, a pro se party is held to the same standards as one who is represented by counsel. See *State v. Devers*, 313 Neb. 866, 986 N.W.2d 747 (2023). The district court held Quinn, as a self-represented litigant, to the proper standards. Upon our review of the record, we find no error by the district court.

- 6 -

Certified Page 6 of 7

- 7 -

## CONCLUSION

The district court did not err in denying Quinn's motion for postconviction relief without an evidentiary hearing.

AFFIRMED.

Certified Page 7 of 7

Filed in Furnas District Court
*** EFILED ***
Case Number: D38CR200000038
Transaction ID: 0022878871
Filing Date: 02/24/2025 03:44:49 PM CST

IN THE DISTRICT COURT OF FURNAS COUNTY, NEBRASKA

| | | |
|---|---|---|
| THE STATE OF NEBRASKA, | ) | Case No: CR 20-38 |
| | ) | |
| Plaintiff, | ) | ORDER DENYING DEFENDANT'S |
| | ) | VERIFIED MOTION FOR |
| vs. | ) | POSTCONVICTION RELIEF |
| | ) | |
| WILLIAM J. QUINN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Before the Court is Defendant's Verified Motion for Postconviction Relief filed December 4, 2023, and the State's Response filed January 4, 2024. The Court takes judicial notice of the Bill of Exceptions. Having now reviewed these documents, the Court finds and orders as follows:

## STANDARD OF REVIEW

The Nebraska Postconviction Act, *Neb. Rev. Stat.* § 29–3001 *et seq.*, provides that postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his constitutional rights such that the judgment was void or voidable. *State v. Crawford*, 291 Neb. 362, 865 N.W.2d 360 (2015). Thus, in a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable. *Id.* If a postconviction motion alleges only conclusions of fact or law, or if the records and files in the case affirmatively show that the defendant is entitled to no relief, the court is not required to grant an evidentiary hearing. *Id.*

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. To show prejudice under the prejudice component of the Strickland test, the defendant must demonstrate a reasonable probability that but for his or her counsel's

deficient performance, the result of the proceeding would have been different. A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome. *State v. Custer*, 298 Neb. 279, 903 N.W.2d 911 (2017).

A motion for postconviction relief cannot be used to secure review of issues that were known to the defendant and could have been litigated on direct review, no matter how those issues may be phrased or rephrased. *State v. Lotter*, 311 Neb. 878, 976 N.W.2d 721 (2022). When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise, the issue will be procedurally barred. *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014).

## ANALYSIS

Defendant's postconviction motion sets forth several issues claiming ineffective assistance of trial counsel, Mallory Hughes and Joe Howard, which include issues:

- A. Failing to present copy of Ben Sasse letter;
- B. Failing to call the following witnesses:
  - i) Ethan Geise;
  - ii) Naomi Keensport;
  - iii) Crystal Joppa;
  - iv) Bucky Weaver:
  - v) Amy Jorgenson;
  - vi) Hipolito Padilla;
  - vii) Josh Geise;
  - viii) Savana Quinn
- C. Failing to call Defendant to testify;
- D. Failing to object to or suppress the following:
  - i) Defendant's home computer;
  - ii) Certain Facebook accounts;
- E. Failing to present evidence regarding the change of venue hearing, certain media clips, the Clerk of the District Court and certain members of law enforcement;
- F. Certain juror issues;

        G. Trial counsel rushing through defense;

        H. Allowing prosecutorial misconduct;

In his Motion, the Defendant also alleges ineffective assistance of counsel on the part of his appellate counsel, Charles Brewster, including:

        I. Not addressing all of the issues he requested on appeal;

The Defendant also raises issues with evidentiary rulings by the trial court, denial of court appointed counsel and excessive sentences in his Motion.

## INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

A motion for postconviction relief asserting ineffective assistance of trial counsel is procedurally barred when (1) the defendant was represented by a different attorney on direct appeal than at trial, (2) an ineffective assistance of trial counsel claim was not brought on direct appeal, and (3) the alleged deficiencies in trial counsel's performance were known to the defendant or apparent from the record. *State v. Newman*, 300 Neb. 770, 916 N.W.2d 393 (2018). The Defendant also raises ineffective assistance of counsel against his appellate counsel for the first time in his Motion. To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *Id.* A court may address the two prongs of this test, deficient performance and prejudice, in either order. *Id.*

In order to establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden first to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. *Id.* In determining whether trial counsel's performance was deficient, courts give counsel's acts a strong presumption of reasonableness. *Id.* An appellate court will not judge an ineffectiveness of counsel claim in hindsight. *Id.* We must assess trial counsel's performance from counsel's perspective when counsel provided the assistance. *Id.* When reviewing claims of ineffective assistance, we will not second-guess trial counsel's reasonable strategic decisions. *Id.*

3

Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case. *Id.* To establish the prejudice prong of a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome. *Id.*

    i.    Issues A through H:

The Defendant raises several issues in A through H above against his trial counsel that were or could have been raised in his direct appeal, *State v. Quinn*, 2022 Neb. App. LEXIS 259, 2022 WL 17420056 (Neb. Ct. App., Dec. 6, 2022) (the "Appeal"). The Court of Appeals addressed several of the issues raised by the Defendant in the Appeal as it pertained to his claim of ineffective assistance of counsel made by him on the Appeal. Issue A, the Sasse letter, was addressed in the Appeal. Issue E related to the change of venue which was an issue directly addressed in the Appeal. Issue D pertaining to Defendant's computer and the victim's cell phone were arguments addressed in the Appeal. A motion for postconviction relief cannot be used to secure review of issues that were known to the defendant and could have been litigated on direct review, no matter how those issues may be phrased or rephrased. *State v. Lotter*, 311 Neb. 878, 976 N.W.2d 721 (2022). An evidentiary hearing is denied on these Issues.

Defendant's claim in Issue B that trial counsel was ineffective by not calling a number of witnesses fails as well. In assessing postconviction claims that trial counsel was ineffective for failing to call a particular witness, the Nebraska Supreme Court has upheld the dismissal without an evidentiary hearing where the motion did not include specific allegations regarding the testimony which the witness would have given if called. *State v. Marks,* 286 Neb. 166, 174, 835 N.W.2d 656, 663 (2013). While the Defendant puts some detail into the description of these witnesses' testimony, he has failed to allege sufficient facts which, if proved, would establish a reasonable probability that the outcome of his

4

unreasonable is sufficient to deny an evidentiary hearing. Further, this was an issue clearly known to the Defendant that could have been litigated on direct appeal. An evidentiary hearing is denied on this Issue.

Regarding Issue H, it is difficult to discern the Defendant's argument on the prosecutor's alleged misconduct and how it relates to his ineffective assistance of counsel claim. The Nebraska Supreme Court thoroughly reviewed the prosecutorial misconduct claim by laying out the appropriate standard and then ultimately concluding the statements were not misconduct and even if they were, Defendant suffered no prejudice. *State v. Wynne*, 24 Neb. App. 377, 887 N.W.2d 515 (2016). Likewise, and using that same analysis, this Court finds that even if statements and actions were misconduct, it is difficult to understand how the Defendant suffered prejudice given the testimony at trial. Further, this was an issue known to the Defendant that could have been litigated on direct appeal. An evidentiary hearing is denied on this Issue.

Issues F and G are conclusory complaints regarding certain jurors and the length of time trial counsel took in presenting the defense. The allegations in the Motion fail to set forth how the Defendant was prejudiced and establish any probability sufficient to undermine confidence in the outcome. Further, these were issues known to the Defendant that could have been litigated on direct appeal. An evidentiary hearing is denied on these Issues.

ii.    Issue I:

Turning to the ineffective assistance of counsel on the part of the appellate attorney, the Nebraska Supreme Court in *State v. Allen*, 301 Neb. 560, 919 N.W.2d 500 (2018) addressed the scenario where the claim is based on the failure of appellate counsel to raise ineffective assistance of counsel on the part of the trial counsel.

> When a claim of ineffective assistance of appellate counsel is based on the failure to raise a claim on appeal of ineffective assistance of trial counsel (a layered claim of ineffective assistance of counsel), an appellate court will look at whether trial counsel was ineffective under the *Strickland* test. If trial counsel was not ineffective, then the defendant was not prejudiced by appellate counsel's failure to raise the issue. Much

6

case would have been different if his trial counsel had called the witnesses he mentions. The Defendant did not satisfy his burden to allege facts amounting to prejudice with respect to this allegation. Further, this was an issue known to the Defendant that could have been litigated on direct appeal. An evidentiary hearing is denied on this Issue.

Defendant's claim that trial counsel was ineffective in Issue C by not having him testify in his own defense is denied based on a lack of prejudice and for failing to state how counsel's advice under these circumstances was unreasonable. With regard to prejudice, the Nebraska Supreme Court rejected similar generic facts in *State v. Johnson*, 298 Neb. 491, 507, 904 N.W.2d 714, 728 (2017):

> Johnson's motion merely alleges that if he were allowed to testify, he "would have refuted the allegations against him" and he "wanted to explain to the jury why he traveled to Michigan." These reasons are mere conclusions of fact and are not sufficiently detailed to constitute factual allegations which, if proved, constitute an infringement of the movant's constitutional rights. Further, Johnson's allegations are insufficient to show a reasonable probability that the outcome would have been different but for the failure to call him as a witness.

Here, Defendant states he would have testified that he was innocent, about discrepancies in victim's testimony and prosecutorial misconduct. However, Defendant fails to explain how this, even if admissible, would have changed the outcome of the trial.

Additionally, Defendant claims he did not testify solely based on advice from one of his trial counsel but fails to elaborate on why counsel's advice to not testify was unreasonable given the minimal testimony Defendant could have provided. *See State v. Golyar*, 301 Neb. 488, 514, 919 N.W.2d 133, 153, (2018) ("But she makes no allegations as to how counsel deficiently advised her regarding these matters or how his advice not to testify was unreasonable. As such, she has failed to allege deficient performance with enough particularity."). The lack of prejudice and explanation as to how counsel's advice was

like claims of ineffective assistance of trial counsel, the defendant must show that *but for* counsel's failure to raise the claim, there is a reasonable probability that the outcome would have been different.

*Id.* at 576, 919 N.W.2d at 513. As set forth above, the Court has found that the trial counsel were not ineffective. Accordingly, the Defendant was not prejudiced by appellate counsel's failure to raise the issues he sets out in Issue I. An evidentiary hearing is denied on this Issue.

iii.    Miscellaneous: As noted above, the Defendant raised additional issues concerning evidentiary rulings by the trial court, denial of court appointed counsel and excessive sentences. All of these issues were previously addressed in the Appeal or by Judge Doyle in decisions post-Appeal. An evidentiary hearing is denied on these Issues.

iv.    Other Issues: Any remaining issue or request made by the Defendant that is not addressed in this Order is denied.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that Defendant's Verified Motion for Postconviction Relief is denied without an evidentiary hearing.

DATED this 24th day of February, 2025.

BY THE COURT:

Patrick M. Heng
District Court Judge

7

## CERTIFICATE OF SERVICE

I, the undersigned, certify that on February 24, 2025 , I served a copy of the foregoing document upon the following persons at the addresses given, by mailing by United States Mail, postage prepaid, or via E-mail:

William J Quinn
P.O. Box 22800
Lincoln, NE 68542-2800

Corey M O'Brien
legalassistant@phelpscone.org

Melissa R Vincent
melissa.vincent@nebraska.gov

George C Welch
george.welch@nebraska.gov

KRVN Radio
dschroeder@krvn.com

Kearney Hub Newspaper
ashley.bebensee@kearneyhub.com

NTV News
mweesner@nebraska.tv

ABC (KHGI-TV) and FOX (KFXL-TV)
akoeller@nebraska.tv

Date:   February 24, 2025     BY THE COURT: _Tiffany Burton_____

                                            CLERK

CLERK
NEBRASKA SUPREME COURT
COURT OF APPEALS

IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. QUINN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

v.

WILLIAM J. QUINN, APPELLANT.

Filed February 17, 2026.   No. A-25-215.

Appeal from the District Court for Furnas County: PATRICK M. HENG, Judge. Affirmed.

William J. Quinn, pro se.

Michael T. Hilgers, Attorney General, and Melissa R. Vincent for appellee.

MOORE, BISHOP, and WELCH, Judges.

MOORE, Judge.

### INTRODUCTION

William J. Quinn appeals from the order of the district court for Furnas County, which denied his motion for postconviction relief without an evidentiary hearing. For the reasons set forth herein, we affirm.

### STATEMENT OF FACTS

This case arose out of a relationship between Quinn, born April 1964, and C.G., born October 2003. Quinn and C.G. began communicating over social media in March 2019 and developed a sexual relationship in June when C.G. moved back to Nebraska.

On July 8, 2020, the State filed an amended information which charged Quinn with four counts of first degree sexual assault of a child in violation of Neb. Rev. Stat. § 28-319.01(1)(b) (Reissue 2016), a Class IB felony; one count of first degree sexual assault in violation of Neb. Rev. Stat. § 28-319 (Reissue 2016), a Class II felony; two counts of sex trafficking of a minor in

- 1 -

Certified Page 1 of 7

violation of Neb. Rev. Stat. § 28-830 (Cum. Supp. 2020), a Class IB felony; three counts of manufacturing a visual depiction of sexually explicit conduct in violation of Neb. Rev. Stat. § 28-1463.03(1) (Reissue 2016), a Class ID felony; two counts of possession of a visual depiction of sexually explicit conduct in violation of Neb. Rev. Stat. § 28-813.01(1) (Cum. Supp. 2020), a Class IIA felony; two counts of enticement by an electronic communication device in violation of Neb. Rev. Stat. § 28-833 (Reissue 2016), a Class IV felony; and one count of child abuse in violation of Neb. Rev. Stat. § 28-707 (Cum. Supp. 2020), a Class IIIA felony. Quinn thereafter entered a plea of not guilty to all charges set forth in the amended information and waived a preliminary hearing related to the amended information.

A jury trial was held over 8 days in June 2021. The jury found Quinn guilty of counts I through III (first degree sexual assault of a child), counts V and VI (sex trafficking of a minor), counts VII through IX (manufacturing a visual depiction of sexually explicit conduct), counts X and XI (possession of a visual depiction of sexually explicit conduct), counts XII and XIII (enticement by electronic communication device), and count XIV (child abuse). The jury found Quinn not guilty of count IV, first degree sexual assault.

Quinn was subsequently sentenced to 30 to 50 years' imprisonment on each of counts I through III, V, and VI, noting that for counts I through III, 15 years of each minimum term are the mandatory minimum, and Quinn must serve all such 15 years without credit for good time. On each of counts VII through IX, Quinn was sentenced to 15 to 35 years' imprisonment, with 3 years being the mandatory minimum for which Quinn must serve without credit for good time. Quinn was sentenced to 10 to 15 years' imprisonment on both counts X and XI; 9 to 24 months' imprisonment on both counts XII and XIII; and 9 to 27 months on count XIV. The court ordered counts I through III, V, and VI to run consecutively to one another; counts VII through XIII to run concurrently with one another but consecutively to the first five counts; and count XIV to run consecutively to all counts.

On direct appeal, Quinn assigned that the district court erred in (1) admitting rule 404 testimony and not receiving the deposition of an unavailable witness; (2) denying his motion to dismiss; and (3) denying his motion for mistrial. He further assigns that (4) the evidence was insufficient to support specific convictions; (5) the sentences imposed were excessive; and (6) his trial counsel was ineffective for failing to provide affidavits in support of his motion for change of venue, to enter a letter by United States Senator Ben Sasse to the Department of Justice requesting their assistance in prosecuting Quinn and his codefendants into evidence, and to object to various electronic exhibits and for stipulating to foundational requirements for their admission into evidence. This court affirmed Quinn's convictions and sentences in a memorandum opinion on December 6, 2022, in case No. A-21-1038.

On December 4, 2023, Quinn, now self-represented, filed a motion for postconviction relief, setting forth 10 claims for relief. Quinn first alleged that trial counsel was ineffective for failing to (a) offer Sasse's letter into evidence; (b) call various witnesses to testify, including Quinn; (c) move to suppress evidence obtained from social media; (d) offer additional evidence to support his motion to change venue; and (e) object to certain jurors and to the jury selection procedure. He further alleged his trial counsel was ineffective for (f) "rushing through his defense" so that counsel could "make a timely transfer of law firms."

Certified Page 2 of 7

Second, Quinn alleged 14 instances of prosecutorial misconduct regarding the investigation and presentation of the case to the jury.

Third, Quinn alleged that the district court erred by admitting rule 404 testimony regarding C.G.'s commercial sexual encounters with another individual.

Fourth, Quinn alleged that the evidence was insufficient to support his convictions as the State failed to prove C.G.'s age.

Fifth, Quinn alleged that the district court erred by refusing to admit a deposition into evidence for the purposes of impeaching C.G.

Sixth, Quinn alleged that the district court erred by refusing to allow trial counsel to cross-examine a witness regarding his previous conduct with teenage girls.

Seventh, Quinn alleged that his appellate counsel was ineffective for failing to raise the issues that he wished to present on his direct appeal and for failing to advise him that he could file a petition for further review to the Nebraska Supreme Court.

Eighth, Quinn alleged that his trial counsel was ineffective for failing to raise multiple trial irregularities in his motion for a new trial. These alleged irregularities included that multiple sidebars and conferences in chambers were held out of the presence of the jury, the jurors were exposed to negative public sentiment regarding Quinn, and the presence of the Attorney General and members of his office at trial created a prejudicial influence.

Ninth, Quinn alleged that the district court erred by failing to appoint counsel to represent him in his postconviction case.

Finally, Quinn alleged that the district court abused its discretion by imposing an excessive sentence.

On January 4, 2024, the State filed a response to Quinn's postconviction motion, asserting that Quinn's claims were procedurally barred or insufficiently plead.

On February 24, 2024, the district court entered an order denying Quinn's motion for postconviction relief without an evidentiary hearing. The court found that most of Quinn's claims could have been litigated on direct appeal and thus were procedurally barred. The court also found that trial counsel was either not ineffective, or Quinn could not show prejudice, and accordingly, his appellate counsel was not ineffective for failing to raise the additional issues of ineffective assistance of trial counsel.

Quinn appeals.

## ASSIGNMENTS OF ERROR

Quinn assigns that the district court erred by (1) abusing its discretion in denying his verified motion for postconviction relief without considering or holding an evidentiary hearing in violation of his constitutional and statutory rights; (2) not providing the indigent defendant counsel as required under the Nebraska Postconviction Act; and (3) not addressing all of the issues claimed in his motion for postconviction relief and avoiding the merits of the issues by holding the indigent, pro se defendant to the same standards as a professional lawyer.

## STANDARD OF REVIEW

In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his

- 3 -

or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Goynes*, 318 Neb. 413, 16 N.W.3d 373 (2025).

Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law which an appellate court reviews independently of the lower court's ruling. *State v. Harms*, 315 Neb. 445, 996 N.W.2d 859 (2023).

Failure to appoint counsel in postconviction proceedings is not error in the absence of an abuse of discretion. *State v. Epp*, 299 Neb. 703, 910 N.W.2d 91 (2018).

## ANALYSIS

### *Denial of Postconviction Relief Without Evidentiary Hearing.*

Quinn asserts that the district court erred in denying his motion for postconviction relief without an evidentiary hearing. However, Quinn's argument in this regard presents limited support for appellate review. Quinn argues that the pleading requirements for postconviction motions are "extremely prejudicial" to him as a pro se postconviction defendant and contends that his allegations were sufficient to warrant an evidentiary hearing. Brief for appellant at 12. Quinn fails to specifically discuss any of the claims made in his motion for postconviction relief or how they merit an evidentiary hearing. He simply argues that his motion was clear enough to warrant a hearing to allow all evidence to be presented.

The appellate court does not conduct an appeal of a postconviction review sua sponte; as with all appeals, the alleged errors of the lower court must be both specifically assigned and specifically argued in the brief of the party asserting the errors to be considered by the appellate court. The appellate court will not scour the record on appeal to understand unclear arguments or find support for broad conclusions. *State v. Jennings*, 312 Neb. 1020, 982 N.W.2d 216 (2022). Conclusory assertions unsupported by coherent analytical argument fail to satisfy the requirement of arguing an assigned error to obtain consideration by an appellate court. *State v. Boppre*, 315 Neb. 203, 995 N.W.2d 28 (2023).

Quinn has failed to satisfy the requirement that the party asserting an alleged error must both specifically assign and specifically argue it in the party's initial brief. This claim fails for this reason alone. However, for the sake of completeness, we also find that the district court did not err in denying an evidentiary hearing.

Postconviction relief is a very narrow category of relief, available only to remedy prejudicial constitutional violations that render the judgment void or voidable. *State v. Davis*, 317 Neb. 59, 8 N.W.3d 247 (2024). The allegations in a motion for postconviction relief must be sufficiently specific for the district court to make a preliminary determination as to whether an evidentiary hearing is justified. *State v. Goynes, supra*. An evidentiary hearing is required on a motion for postconviction relief unless: (1) the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights rendering the judgment void or voidable; (2) the motion alleges only conclusions of fact or law without supporting facts; or (3) the records and files affirmatively show that the defendant is entitled to no relief. *Id.*

Claim Nos. 2, 6, 8, and a majority of 1 (except for the allegation regarding Sasse's letter) were known to Quinn at the time of his direct appeal and thus could have been raised but were not. The need for finality in the criminal process requires that a defendant bring all claims for relief at the first opportunity. *State v. Lotter*, 311 Neb. 878, 976 N.W.2d 721 (2022). When an issue could

- 4 -

Certified Page 4 of 7

have been raised on direct appeal, it is procedurally barred from postconviction relief, no matter how the issues may be phrased or rephrased. *Id.* Thus, these claims are procedurally barred.

Claim Nos. 3, 4, 5, 10, and part of 1 (alleging that trial counsel was ineffective for failing to offer Sasse's letter into evidence) were decided against Quinn on direct appeal. A defendant cannot use a motion for postconviction relief to collaterally attack issues that were decided against him or her on direct appeal. *State v. Thorpe*, 290 Neb. 149, 858 N.W.2d 880 (2015). These claims are likewise procedurally barred.

Claim No. 9 does not implicate a constitutional right. There is no federal or state constitutional right to an attorney in state postconviction proceedings. *State v. Custer*, 298 Neb. 279, 903 N.W.2d 911 (2017). As such an evidentiary hearing on this claim was not required.

In his postconviction claim No. 7, Quinn raises an allegation of ineffective assistance of appellate counsel, arguing that his appellate counsel was ineffective in failing to raise the issues that he wished to present on direct appeal and for further failing to advise him that he could file a petition for further review. Because Quinn's appellate counsel was the same as his trial counsel, this postconviction proceeding was Quinn's first opportunity to assert the ineffectiveness of his appellate counsel. A claim of ineffective assistance of appellate counsel which could not have been raised on direct appeal may be raised on postconviction review. *State v. Stelly*, 308 Neb. 636, 955 N.W.2d 729 (2021).

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Betancourt-Garcia*, 317 Neb. 174, 9 N.W.3d 426 (2024). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The likelihood of a different result must be substantial, not just conceivable. *State v. Lessley*, 312 Neb. 316, 978 N.W.2d 620 (2022). The two prongs of the test under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), may be addressed in either order, and the entire ineffectiveness analysis should be viewed with a strong presumption that counsel's actions were reasonable. *State v. Cox*, 314 Neb. 104, 989 N.W.2d 65 (2023).

In his postconviction motion, Quinn alleged that he sent a letter to his appellate counsel in which he "outlined the issues he wished to present and numbered them 1 [through] 24." Quinn contends that his appellate counsel declined to "address several issues brought to his attention" in a response letter to Quinn. Quinn then quotes extensively from his appellate counsel's letter to him.

However, Quinn's motion for postconviction relief fails to allege sufficient facts that would support this claim of ineffective assistance of appellate counsel. See *State v. Goynes, supra*. Quinn did not attach a copy of his own letter to his appellate counsel to his motion. Nor did Quinn include any language from his own letter in his motion or otherwise specify the claims he brought up to appellate counsel. We are therefore unable to determine which claims Quinn's appellate counsel allegedly declined to address through Quinn's direct appeal. This claim fails.

- 5 -

In his postconviction motion, Quinn also alleged that his appellate counsel was ineffective for failing to file a petition for further review and for failing to advise Quinn of his right to such. The Nebraska Supreme Court has held that a defendant does not have a constitutional right to counsel beyond the conclusion of his or her direct appeal and that therefore, he or she cannot be deprived of effective assistance of counsel based on the failure of counsel to timely file a petition for further review. See *State v. Crawford*, 291 Neb. 362, 865 N.W.2d 360 (2015), *disapproved on other grounds, State v. Burries*, 310 Neb. 688, 969 N.W.2d 96 (2022). Therefore, this claim also fails, and an evidentiary hearing was not required.

*Alleged Failure to Appoint Postconviction Counsel.*

Next, Quinn assigns that the district court erred by failing to provide him with counsel, as required by the Nebraska Postconviction Act.

As set out above, there is no federal or state constitutional right to an attorney in state postconviction proceedings. See *State v. Custer, supra*. Under the Nebraska Postconviction Act, Neb. Rev. Stat. § 29–3001 et seq. (Cum. Supp. 2024), it is within the discretion of the trial court whether to appoint counsel to represent the defendant. *State v. Wetherell*, 289 Neb. 312, 855 N.W.2d 359 (2014), *disapproved on other grounds, State v. Goynes, supra*. When the defendant's motion presents a justiciable issue to the district court for postconviction determination, an indigent defendant is entitled to the appointment of counsel. Where the assigned errors in the postconviction motion before the district court are either procedurally barred or without merit, establishing that the postconviction proceeding contained no justiciable issue of law or fact, it is not an abuse of discretion to fail to appoint counsel for an indigent defendant. *Id.*

As we have found above, Quinn has not alleged facts sufficient to entitle him to an evidentiary hearing on his postconviction claims. Quinn has raised no justiciable issue of law or fact, and therefore, the district court did not abuse its discretion when it did not appoint counsel.

*Alleged Failure to Address Claims Raised in Postconviction Motion.*

Finally, Quinn assigns that the district court erred by not addressing all of the issues claimed in his motion for postconviction relief and avoiding the merits of the issues by holding an indigent, pro se defendant to the same standards as a professional lawyer.

Quinn does not identify which claims the district court allegedly failed to address in its denial of postconviction relief without an evidentiary hearing. Where an appellant's brief contains conclusory assertions unsupported by coherent analytical argument, the appellant fails to satisfy the requirement that a party asserting alleged error must both specifically assign and specifically argue it in the party's initial brief. *State v. Ramos*, 319 Neb. 511, 23 N.W.3d 640 (2025). We therefore decline to address this assertion further.

Additionally, a pro se party is held to the same standards as one who is represented by counsel. See *State v. Devers*, 313 Neb. 866, 986 N.W.2d 747 (2023). The district court held Quinn, as a self-represented litigant, to the proper standards. Upon our review of the record, we find no error by the district court.

- 6 -

CONCLUSION

The district court did not err in denying Quinn's motion for postconviction relief without an evidentiary hearing.

AFFIRMED.

- 7 -

**Certified Page 7 of 7**

BEN SASSE
NEBRASKA

COMMITTEES:

FINANCE
INTELLIGENCE
JUDICIARY
BUDGET

# United States Senate

WASHINGTON, DC 20510-2709

June 18, 2021

The Honorable Merrick B. Garland
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue
Washington, D.C. 20530

Dear General Garland,

I write to you today to draw your attention to an egregious inter-state child sex trafficking case in Nebraska. A case such as this demands the full engagement of the Department of Justice to ensure that justice is done.

In the summer of 2019, William "Billy" Quinn used Facebook to lure a 15-year-old girl from North Carolina to Nebraska by offering her a job in his café.[1] The first time they met, he forced her to perform sex acts on him.[2] When she tried to escape, he threatened her by placing a knife against her throat, and the she maintained a relationship with him out of fear that he would hurt her.[3] By the summer of 2020, he had forced the minor to move into his home where he raped her at least 100 times.[4] He would frequently drive the girl around in his truck and offer other men that he knew the opportunity to abuse her.[5] On multiple particularly horrific occasions, he took the girl to a hotel and forced her to have sex with a group of men whom he charged $50 each for the opportunity to rape her.[6] Nebraska prosecutors have charged him with a wide variety of offenses, and his trial began this week.[7]

The federal government has a critical role in fighting interstate human trafficking, especially when it involves a minor. As such, I ask that the Department engage with our state and local law enforcement in Nebraska to offer its full support to ensure that Quinn and his fellow child rapists are all prosecuted to the full extent of the law for these despicable acts. In addition, I ask that you undertake a full review of the authorities available to the Department to investigate, interdict, and prosecute sex trafficking cases and advise me and the other members of the Senate Judiciary Committee as to any additional tools the Department needs to fight this scourge within 30 days.

---

[1] Ashley Bebensee, *Furnas County sex trafficking victim said she was sold to several men for $50*, Lincoln Journal Star, June 17, 2021, https://journalstar.com/news/state-and-regional/crime-and-courts/furnas-county-sex-trafficking-victim-said-she-was-sold-to-several-men-for-50/article_90e66164-00fd-5974-b9ac-87f6c8bb39c3.html
[2] *Id.*
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*

KEARNEY OFFICE
4111 FOURTH AVENUE, SUITE 26
KEARNEY, NE 68845
(308) 233-3677

LINCOLN OFFICE
1128 LINCOLN MALL, SUITE 305
LINCOLN, NE 68508
(402) 476-1400

OMAHA OFFICE
304 NORTH 168TH CIRCLE, SUITE 213
OMAHA, NE 68118
(402) 550-8040

SCOTTSBLUFF OFFICE
115 RAILWAY STREET, SUITE C102
SCOTTSBLUFF, NE 69361
(308) 632-6032

WASHINGTON DC OFFICE
139 RUSSELL SENATE OFFICE BLDG
WASHINGTON, DC 20510-2709
(202) 224-4224

Thank you for your attention to this matter. I look forward to your prompt response.

Sincerely,

Ben Sasse
United States Senator



PRESS FIRMLY TO SEAL

quadient
CORRECTION
IMI
$001.50 ⁰
05/05/2026 ZIP 68522
043M30251651
US POSTAGE

quadient
PRIORITY MAIL
IMI
$009.65 ⁰
12/05/2023 ZIP 68522
043M30251651
US POSTAGE

 **UNITED STATES POSTAL SERVICE**® | **PRIORITY® MAIL**

**PRIORITY® ★ MAIL ★**  **UNITED STATES POSTAL SERVICE**®
VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

- Expected delivery date specified for domestic use.
- Domestic shipments include $100 of insurance (restrictions apply).*
- USPS Tracking® service included for domestic and many international destinations.
- Limited international insurance.**
- When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the Domestic Mail Manual at *http://pe.usps.com*.

** See International Mail Manual at *http://pe.usps.com* for availability and limitations of coverage.

**FROM:**

Inmate Name WILLIAM QUINN
(First)                    (Last)
Inmate # 214206
P.O. Box 22800
Lincoln, NE 68542-2800

Notice this correspondence was mailed from an institution operated by the Nebraska Department of Corrections. Its contents are uncensored.

RECEIVED
MAY 11 2026
CLERK
U.S. DISTRICT COURT

**TO:**
U.S DISTRICT COURT CLERK
ROMAN L. HRUSKA U.S. COURTHOUSE
III S 18TH PLZ #1152
OMAHA, NE 68102

# FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT

# TRACKED ■ INSURED

To schedule free Package Pickup, scan the QR code.



USPS.COM/PICKUP



PS00001000014

EP14F July 2022
OD: 12 1/2 x 9 1/2

Label 228, March 2016          FOR DOMESTIC AND INTERNATIONAL USE

This package is made from post-consumer waste. Please recycle - again.

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; July 2022; All rights reserved.

 

**UNITED STATES POSTAL SERVICE** ®  |  **PRIORITY** ® **MAIL**

## FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP

LEGAL

## TRACKED ■ INSURED



PS00001000014

EP14F July 2022
OD: 12 1/2 x 9 1/2

**VISIT US AT USPS.COM** ®
ORDER FREE SUPPLIES ONLINE

For Domestic shipments, the maximum weight is 70 lbs. For international shipments, the maximum weight is 20 lbs.